Justice ALITO delivered the opinion of the Court.
The Hobbs Act makes it a crime for a person to affect commerce, or to attempt to do so, by robbery. 18 U.S.C. § 1951(a). The Act defines "commerce" broadly as interstate commerce "and all other commerce over which the United States has jurisdiction." § 1951(b)(3). This case requires us to decide what the Government must prove to satisfy the Hobbs Act's commerce element when a defendant commits a robbery that targets a marijuana dealer's drugs or drug proceeds.
The answer to this question is straightforward and dictated by our precedent. We held in Gonzales v. Raich, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), that the Commerce Clause gives Congress authority to regulate the national market for marijuana, including the authority to proscribe the purely intrastate production, possession, and sale of this controlled substance. Because Congress may regulate these intrastate activities based on their aggregate effect on interstate commerce, it follows that Congress may also regulate intrastate drug theft . And since the Hobbs Act criminalizes robberies and attempted robberies that affect any commerce "over which the United States has jurisdiction," § 1951(b)(3), the prosecution in a Hobbs Act robbery case satisfies the Act's commerce element if it shows that *2078 the defendant robbed or attempted to rob a drug dealer of drugs or drug proceeds. By targeting a drug dealer in this way, a robber necessarily affects or attempts to affect commerce over which the United States has jurisdiction.
In this case, petitioner Anthony Taylor was convicted on two Hobbs Act counts based on proof that he attempted to rob marijuana dealers of their drugs and drug money. We hold that this evidence was sufficient to satisfy the Act's commerce element.
I
Beginning as early as 2009, an outlaw gang called the "Southwest Goonz" committed a series of home invasion robberies targeting drug dealers in the area of Roanoke, Virginia. 754 F.3d 217, 220 (C.A.4 2014). For obvious reasons, drug dealers are more likely than ordinary citizens to keep large quantities of cash and illegal drugs in their homes and are less likely to report robberies to the police. For participating in two such home invasions, Taylor was convicted of two counts of Hobbs Act robbery, in violation of § 1951(a), and one count of using a firearm in furtherance of a crime of violence, in violation of § 924(c).
The first attempted drug robbery for which Taylor was convicted occurred in August 2009. Id ., at 220. Taylor and others targeted the home of Josh Whorley, having obtained information that Whorley dealt "exotic and high grade" marijuana. Ibid. "The robbers expected to find both drugs and money" in Whorley's home. Ibid. Taylor and the others broke into the home, searched it, and assaulted Whorley and his girlfriend. They demanded to be told the location of money and drugs but, not locating any, left with only jewelry, $40, two cell phones, and a marijuana cigarette. Ibid.
The second attempted drug robbery occurred two months later in October 2009 at the home of William Lynch. Ibid. A source informed the leader of the gang that, on a prior occasion, the source had robbed Lynch of 20 pounds of marijuana in front of Lynch's home. The gang also received information that Lynch continued to deal drugs. Taylor and others broke into Lynch's home, held his wife and young children at gunpoint, assaulted his wife, and demanded to know the location of his drugs and money. Again largely unsuccessful, the robbers made off with only a cell phone. Id., at 221.
For his participation in these two home invasions, Taylor was indicted under the Hobbs Act on two counts of affecting commerce or attempting to do so through robbery. App. 11a-13a. His first trial resulted in a hung jury. On retrial, at the urging of the Government, the District Court precluded Taylor from introducing evidence that the drug dealers he targeted might be dealing in only locally grown marijuana. Id., at 60a; see 754 F.3d, at 221. During the second trial, Taylor twice moved for a judgment of acquittal on the ground that the prosecution had failed to meet its burden on the commerce element, Tr. 445-447, 532-533; see 754 F.3d, at 221, but the District Court denied those motions, holding that the proof that Taylor attempted to rob drug dealers was sufficient as a matter of law to satisfy that element. Tr. 446, 532-533. The jury found Taylor guilty on both of the Hobbs Act counts and one of the firearms counts. App. 67a-69a.
On appeal, Taylor challenged the sufficiency of the evidence to prove the commerce element of the Hobbs Act, but the Fourth Circuit affirmed. "Because drug dealing in the aggregate necessarily affects interstate commerce," the court reasoned, "the government was simply required *2079 to prove that Taylor depleted or attempted to deplete the assets of such an operation." 754 F.3d, at 224.
We granted certiorari to resolve a conflict in the Circuits regarding the demands of the Hobbs Act's commerce element in cases involving the theft of drugs and drug proceeds from drug dealers. 576 U.S. ----, 136 S.Ct. 26, 192 L.Ed.2d 998 (2015).
II
A
The Hobbs Act provides in relevant part as follows:
"Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery ... or attempts or conspires so to do ... shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a).
The Act then defines the term "commerce" to mean
"commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction." § 1951(b)(3).
The language of the Hobbs Act is unmistakably broad. It reaches any obstruction, delay, or other effect on commerce, even if small, and the Act's definition of commerce encompasses "all ... commerce over which the United States has jurisdiction." Ibid. We have noted the sweep of the Act in past cases. United States v. Culbert, 435 U.S. 371, 373, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978) ("These words do not lend themselves to restrictive interpretation"); Stirone v. United States, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (The Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence").
B
To determine how far this commerce element extends-and what the Government must prove to meet it-we look to our Commerce Clause cases. We have said that there are three categories of activity that Congress may regulate under its commerce power: (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce, ... i.e., those activities that substantially affect interstate commerce." United States v. Lopez, 514 U.S. 549, 558-559, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). We have held that activities in this third category-those that "substantially affect" commerce-may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal. See Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 87 L.Ed. 122 (1942) ("[E]ven if appellee's activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce").
While this final category is broad, "thus far in our Nation's history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is *2080 economic in nature." United States v. Morrison, 529 U.S. 598, 613, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).
In this case, the activity at issue, the sale of marijuana, is unquestionably an economic activity. It is, to be sure, a form of business that is illegal under federal law and the laws of most States. But there can be no question that marijuana trafficking is a moneymaking endeavor-and a potentially lucrative one at that.
In Raich, the Court addressed Congress's authority to regulate the marijuana market. The Court reaffirmed "Congress' power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." 545 U.S., at 17, 125 S.Ct. 2195. The production, possession, and distribution of controlled substances constitute a "class of activities" that in the aggregate substantially affect interstate commerce, and therefore, the Court held, Congress possesses the authority to regulate (and to criminalize) the production, possession, and distribution of controlled substances even when those activities occur entirely within the boundaries of a single State. Any other outcome, we warned, would leave a gaping enforcement hole in Congress's regulatory scheme. Id., at 22, 125 S.Ct. 2195.
The case now before us requires no more than that we graft our holding in Raich onto the commerce element of the Hobbs Act. The Hobbs Act criminalizes robberies affecting "commerce over which the United States has jurisdiction." § 1951(b)(3). Under Raich, the market for marijuana, including its intrastate aspects, is "commerce over which the United States has jurisdiction." It therefore follows as a simple matter of logic that a robber who affects or attempts to affect even the intrastate sale of marijuana grown within the State affects or attempts to affect commerce over which the United States has jurisdiction.
C
Rejecting this logic, Taylor takes the position that the robbery or attempted robbery of a drug dealer's inventory violates the Hobbs Act only if the Government proves something more. This argument rests in part on the fact that Raich concerned the Controlled Substances Act (CSA), the criminal provisions of which lack a jurisdictional element. See 21 U.S.C. §§ 841(a), 844. The Hobbs Act, by contrast, contains such an element-namely, the conduct criminalized must affect or attempt to affect commerce in some way or degree. See 18 U.S.C. § 1951(a). Therefore, Taylor reasons, the prosecution must prove beyond a reasonable doubt either (1) that the particular drugs in question originated or were destined for sale out of State or (2) that the particular drug dealer targeted in the robbery operated an interstate business. See Brief for Petitioner 25-27; Reply Brief 8. The Second and Seventh Circuits have adopted this same argument. See United States v. Needham, 604 F.3d 673, 681 (C.A.2 2010) ; United States v. Peterson, 236 F.3d 848, 855 (C.A.7 2001).
This argument is flawed. It confuses the standard of proof with the meaning of the element that must be proved. There is no question that the Government in a Hobbs Act prosecution must prove beyond a reasonable doubt that the defendant engaged in conduct that satisfies the Act's commerce element, but the meaning of that element is a question of law. And, as noted, Raich established that the purely intrastate production and sale of marijuana is commerce over which the Federal Government has jurisdiction. Therefore, if the Government proves beyond a reasonable *2081 doubt that a robber targeted a marijuana dealer's drugs or illegal proceeds, the Government has proved beyond a reasonable doubt that commerce over which the United States has jurisdiction was affected.
The only way to escape that conclusion would be to hold that the Hobbs Act does not exercise the full measure of Congress's commerce power. But we reached the opposite conclusion more than 50 years ago, see Stirone, 361 U.S., at 215, 80 S.Ct. 270 and it is not easy to see how the expansive language of the Act could be interpreted in any other way.
This conclusion does not make the commerce provision of the Hobbs Act superfluous. That statute, unlike the criminal provisions of the CSA, applies to forms of conduct that, even in the aggregate, may not substantially affect commerce. The Act's commerce element ensures that applications of the Act do not exceed Congress's authority. But in a case like this one, where the target of a robbery is a drug dealer, proof that the defendant's conduct in and of itself affected or threatened commerce is not needed. All that is needed is proof that the defendant's conduct fell within a category of conduct that, in the aggregate, had the requisite effect.
D
Contrary to the dissent, see post, at 2087 - 2088 (opinion of THOMAS, J.), today's holding merely applies-it in no way expands-Raich 's interpretation of the scope of Congress's power under the Commerce Clause. The dissent resists the substantial-effects approach and the aggregation principle on which Raich is based, see post, at 2087 - 2088. But we have not been asked to reconsider Raich . So our decision in Raich controls the outcome here. As long as Congress may regulate the purely intrastate possession and sale of illegal drugs, Congress may criminalize the theft or attempted theft of those same drugs.
We reiterate what this means. In order to obtain a conviction under the Hobbs Act for the robbery or attempted robbery of a drug dealer, the Government need not show that the drugs that a defendant stole or attempted to steal either traveled or were destined for transport across state lines. Rather, to satisfy the Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is "commerce over which the United States has jurisdiction." And it makes no difference under our cases that any actual or threatened effect on commerce in a particular case is minimal. See Perez v. United States, 402 U.S. 146, 154, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class" (emphasis deleted)).
E
In the present case, the Government met its burden by introducing evidence that Taylor's gang intentionally targeted drug dealers to obtain drugs and drug proceeds. One of the victims had been robbed of substantial quantities of drugs at his residence in the past, and the other was thought to possess high-grade marijuana. The robbers also made explicit statements in the course of the robberies revealing that they believed that the victims possessed drugs and drug proceeds. Tr. 359 (asking Lynch "where the weed at"); id ., at 93 (asking Whorley "where the money was at, where the weed was at"); id ., at 212-213 (asking Whorley, "Where is your money and where is your weed at?"). Both robberies were committed with the *2082 express intent to obtain illegal drugs and the proceeds from the sale of illegal drugs. Such proof is sufficient to meet the commerce element of the Hobbs Act.
Our holding today is limited to cases in which the defendant targets drug dealers for the purpose of stealing drugs or drug proceeds. We do not resolve what the Government must prove to establish Hobbs Act robbery where some other type of business or victim is targeted. See, e.g., Stirone, supra, at 215, 80 S.Ct. 270 (Government offered evidence that the defendant attempted to extort a concrete business that actually obtained supplies and materials from out of State).
* * *
The judgment of the Fourth Circuit is affirmed.
It is so ordered.