**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 16a0614n.06

Case No. 15-6069

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 18, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| NICKLESS WHITSON, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: MOORE, SUTTON, and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Looking for cocaine, marijuana, and cash, Nickless Whitson robbed two houses with two sets of co-conspirators. That led to eight criminal convictions, several of which he challenges on appeal. We affirm nearly all of the convictions but must vacate two of the § 924(c) convictions and remand for entry of a revised judgment and sentence.

In 2011, Whitson planned and executed the robbery of a house in LaVergne, Tennessee, where Chris Leggs, a cocaine dealer, lived. *See United States v. Vichitvongsa*, 819 F.3d 260, 265 (6th Cir. 2016). Whitson met with Manila Vichitvongsa, Jatavius Sanders, Sithana Keonoi, Beth Keonoi, and Jessica Parker at a KFC and caravanned to the house. Leggs wasn't home, but Dominique Baker was. The co-conspirators stuck guns in Baker's face, forced her inside onto a couch, and tied her up. Hoping to find cocaine and money from Leggs' drug dealing, the co-

conspirators forcibly interrogated Baker, kicking her in the face and threatening to kill her. An armed Whitson served as a lookout. The conspirators didn't find any cocaine or cash, settling instead for two guns and some jewelry.

Vichitvongsa and his friend Blake Byrd wanted to retaliate against Daniel Crowe, a marijuana distributor who had beaten up Byrd in February 2011. Around the spring of 2011, Byrd began talking with Vichitvongsa about the Elmwood house, where they thought Crowe had stashed about $300,000 in drug proceeds. Vichitvongsa's plan to rob the house took shape during the summer of 2011. Byrd, Vichitvongsa, and Whitson went to case the house. Soon after, Vichitvongsa, Nickless Whitson, Angela Whitson, Sithana Keonoi, Beth Keonoi, and Sanders travelled to the Elmwood house and hid nearby until the sun set. That night, several of the conspirators, including an armed Whitson, left the cover of the woods and broke into the house. Lorraine and William Webb, Crowe's mother and stepfather, were sleeping inside, but Crowe was not there. The robbers cuffed the Webbs' hands with zip ties, put guns to their heads, and ransacked the house looking in vain for marijuana and money. When the frustrated assailants threatened to burn Lorraine Webb alive, William Webb freed himself from his restraints and lunged at the robbers with a hard plastic knife sheath. Sithana Keonoi shot William Webb (who survived), and the robbers fled the house with grow lights, some guns, and the Webbs' car. *See Vichitvongsa*, 819 F.3d at 265.

The government indicted Whitson on eight counts. As to the LaVergne robbery, the jury found him guilty of (1) conspiring to violate the Hobbs Act, 18 U.S.C. § 1951; (2) aiding and abetting the possession of a firearm in relation to a crime of violence, *id.* §§ 2, 924(c)(1)(A); (3) conspiring to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 846; and (4) aiding and abetting the possession of a firearm in relation to a drug-trafficking crime, 18 U.S.C. §§ 2, 924(c)(1)(A).

As to the Elmwood robbery, the jury found Whitson guilty of (1) conspiring to violate the Hobbs Act; (2) brandishing a firearm in relation to a crime of violence, *id.* §§ 2, 924(c)(1)(A); (3) conspiring to distribute marijuana, 21 U.S.C. §§ 841(a)(1), 846; and (4) brandishing a firearm in relation to a drug-trafficking crime, 18 U.S.C. §§ 2, 924(c)(1)(A). The district court sentenced Whitson to 1,252 months.

*Connection to interstate commerce.* On appeal, Whitson argues that the government failed to show that the Hobbs Act robberies affected interstate commerce. "In order to obtain a conviction under the Hobbs Act for the robbery or attempted robbery of a drug dealer," the Supreme Court has said, "the Government need not show that the drugs that a defendant stole or attempted to steal either traveled or were destined for transport across state lines. Rather, to satisfy the Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is 'commerce over which the United States has jurisdiction.'" *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016); *see Gonzales v. Raich*, 545 U.S. 1 (2005). The government satisfied the commerce element of the Hobbs Act because it proved that Whitson and his co-conspirators attempted to steal marijuana, cocaine, and drug proceeds. *See Taylor*, 136 S. Ct. at 2081–82.

Some justices and judges, it is true, have expressed skepticism about the reach of federal power in this area, noting the federal government's limited and enumerated powers and the oddity that it can punish "local, small-scale robberies that States traditionally prosecute." *E.g.*, *id.* at 2089 (Thomas, J., dissenting). But those expressions have come through dissents. As for majority decisions in this area, the rule is that "it makes no difference . . . that any actual or threatened effect on commerce in [this] particular case is minimal." *Id.* at 2081. That Whitson and his co-conspirators attempted to steal drugs that were in interstate commerce is all that

matters. *See Raich*, 545 U.S. at 22; *United States v. Conyers*, 603 F. App'x 462, 465–66 (6th Cir. 2015).

*Hobbs Act robbery instructions.* In a variation on this theme, Whitson asked the district court to instruct the jury that each robbery "involved private citizens/individuals and was directed at a private residence rather than a business. The robber[ies] . . . had no 'realistic probability' of affecting interstate commerce." R. 830 at 2. The proposed instructions were part and parcel of the defense's theory that, because Whitson and his co-conspirators robbed private homes rather than legitimate businesses, the government faced a higher bar for the commerce element and had to show that these particular conspiracies had "a realistic probability of affecting interstate commerce." R. 928 at 213–14. But the Supreme Court's decision in *Taylor* makes such an instruction unnecessary—and indeed incorrect. All the government had to show was that Whitson "knowingly stole or attempted to steal drugs or drug proceeds." *Taylor*, 136 S. Ct. at 2081. The government did not have to show that these drugs "either traveled or were destined for transport across state lines." *Id.* A district court does not abuse its discretion by rejecting inaccurate instructions.

*Two separate sets of conspiracies.* Whitson adds that the government failed to prove beyond a reasonable doubt that there were "two separate drug conspiracies and two separate conspiracies to violate the Hobbs Act." Appellant's Br. 15. As he sees it, there was just one extended Hobbs Act robbery conspiracy and one extended drug conspiracy that covered the LaVergne and Elmwood robberies. But another panel of this court has already rejected this argument. It held that the LaVergne conspiracies were distinct from the Elmwood conspiracies. *Vichitvongsa*, 819 F.3d at 272–74. That by itself suffices to reject the argument.

4

Out of an abundance of caution, we will address the point nonetheless. At stake is whether there was a "single agreement to commit several crimes constitut[ing] one [robbery] conspiracy" and one drug conspiracy or instead "multiple agreements to commit separate crimes constitut[ing] multiple [robbery] conspiracies" and multiple drug conspiracies. *Id.* at 273 (quotation omitted). That inquiry turns on "a five-factor 'totality of the circumstances' test" that "consider[s] the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place." *Vichitvongsa*, 819 F.3d at 273 (quotation omitted). The district court's application of this test receives clear-error review. *Id.*

Because "several of these factors differ between the [sets of] conspiracies," "including the most significant factor, the nature of the co-conspirators' actions," the district court did not clearly err in determining that there were two separate sets of conspiracies. *Id.* at 273–74. "[T]here is no evidence weaving the two [robberies] together into a single, overarching plan to target money and drugs, or to use violence to accomplish this goal. Rather, the evidence confirms the robberies were acts of opportunity without overarching collaboration, with different co-conspirators driving each." *Id.* at 274. The nature of the activities, the crucial factor, "weighs heavily in the government's favor." *Id.*

The location of the sets of conspiracies favors the government too. *Id.* The conspirators staged the LaVergne robbery from a KFC and the Elmwood robbery from a Home Depot. The robberies "all occurred in metropolitan Nashville," roughly an hour's drive away from each other, "but the record is devoid of any other evidence connecting these locations together other

than the fact that they were circumstantial opportunit[ies] near the co-conspirators' residences." *Vichitvongsa*, 819 F.3d at 274 (quotation omitted).

Time also favors the government. The two robberies took place two weeks apart, and only a few of the conspirators contemplated robbing the Elmwood house before they robbed the LaVergne house. *Id.* at 273. The government's success on these three factors suffices to conclude that the court did not clearly err by treating the LaVergne conspiracies as separate from the Elmwood conspiracies. *Id.* at 274.

The other two factors, we realize, favor the government less convincingly or not at all. While "there is overlap between the conspirators in the two robberies," *id.* at 273, it is not complete. "[T]here is no evidence linking Byrd, the person responsible for providing the 'lead' for the [Elmwood] residence," or Angela Whitson to the LaVergne robbery. *Id.* at 274. And Jessica Parker didn't participate in the Elmwood conspiracies. "At best, the [persons] factor slightly favors defendant." *Id.* Second, the offenses charged in the indictment were identical for the two sets of conspiracies except for "the place of the robbery and the kind of drugs sought." *Id.* This factor "weighs in defendant's favor" but not sufficiently to outweigh the others. *Id.*

*Vagueness challenge.* Whitson claims that we should throw out his four firearm convictions because § 924(c)(3)(B)'s definition of "crime of violence" is unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. 2551 (2015). But the two firearm convictions related to the drug distribution conspiracies were "in relation to . . . drug trafficking crime[s]" and did not rely on the definition of "crime of violence." 18 U.S.C. § 924(c)(1)(A). Moreover, § 924(c)(3)(B), we have already held, is not unconstitutionally vague. *United States v. Taylor*, 814 F.3d 340, 375–79 (6th Cir. 2016).

*Double jeopardy challenge to firearm charges.* The government and Whitson agree that two of his firearms convictions violated the Double Jeopardy Clause in light of *Vichitvongsa*, 819 F.3d at 266–70. The jury convicted Whitson on four firearm charges, two for the LaVergne robbery and drug conspiracies and two for the Elmwood robbery and drug conspiracies. But because Whitson "chose to use a firearm once during each robbery to simultaneously further two conspiracies," the district court should have "dismiss[ed] one of defendant's § 924(c) counts for each robbery" and drug conspiracy set. *Vichitvongsa*, 819 F.3d at 268, 270. Consistent with the government's confession of error, we vacate two of Whitson's § 924(c) convictions, either count 2 or 4 (the LaVergne set) plus either count 6 or 8 (the Elmwood set). "[T]he proper penalties are the same given § 924(c)'s mandatory term (regardless of which two of the four counts are vacated)," making it appropriate to "remand to the district court for the limited purpose of entering a revised judgment and sentence consistent with this opinion." *Id.* at 270; 18 U.S.C. § 924(c)(1)(A)(1), (c)(1)(C)(1).

For these reasons, we reverse and vacate two of Whitson's § 924(c) convictions, remand for entry of a revised judgment and sentence, and affirm the rest of the district court's judgment.