**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

REGINALD HUMPHREY,

    Defendant - Appellant.

No. 15-4182

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:12-CR-00039-DB-1)**
_____

Submitted on the briefs:[*]

Kathryn N. Nester, Federal Public Defender, and Scott Keith Wilson, Assistant Federal Public Defender, District of Utah, Salt Lake City, Utah, for Defendant-Appellant.

John W. Huber, United States Attorney, and Ryan D. Tenney, Assistant United States Attorney, District of Utah, Salt Lake City, Utah, for Plaintiff-Appellee.

_____

Before **HARTZ**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

Reginald Humphrey appeals the denial of his motion to dismiss an indictment charging him with one count of producing child pornography in violation of 18 U.S.C. § 2251(a). Humphrey asserts the district court erred in rejecting his argument that applying § 2251(a) to the intrastate production of child pornography violates the Commerce Clause. Finding no basis to overturn our prior precedent rejecting this same argument, we affirm.

## BACKGROUND

In 2007, S.L. told police that Humphrey, her mother's live-in boyfriend, had been sexually abusing her for the past two years in their Utah home. While investigating these allegations, police found videos and still images on Humphrey's laptop computer and digital camera depicting the abuse. But they found no evidence that Humphrey transmitted the videos or images over the internet or otherwise shared them with anyone. Humphrey pled guilty in state court to one count of rape and one count of forcible sexual abuse, and the state court imposed a prison term of five years to life.

A federal grand jury subsequently indicted Humphrey for, in relevant part, one count of producing child pornography, in violation of 18 U.S.C. § 2251(a). Humphrey moved to dismiss the indictment, arguing that applying § 2251(a) to his solely intrastate production of child pornography violates the Commerce Clause. Citing this court's precedent holding otherwise, the district court denied the motion. Humphrey then conditionally pled guilty, reserving his right to appeal the district court's ruling. *See* Fed. R. Crim. P. 11(a)(2). The district court imposed a 16-year

prison sentence with a 4-year downward adjustment for time served on the undischarged state sentence. *See* U.S.S.G. § 5G1.3(b)(1). Humphrey appeals.

## DISCUSSION

In his plea, Humphrey admitted that he sexually assaulted S.L., produced a video of the assault using a digital camera that had traveled in interstate commerce, and transmitted the video to his laptop using an SD card that had also traveled in interstate commerce.

There's no question that § 2251(a) prohibits Humphrey's conduct. *See* § 2251(a) (prohibiting using "any minor to engage in . . . sexually explicit conduct for the purpose of producing any visual depiction of such conduct . . . if that visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means"). Rather, the question is whether applying § 2251(a) to Humphrey's conduct—i.e., locally producing child pornography for personal consumption without placing the pornographic images into the stream of interstate commerce—violates the Commerce Clause. This is a question of law that we review de novo. *United States v. White*, 782 F.3d 1118, 1123 (10th Cir. 2015). But, as Humphrey acknowledges, this is a question we've already answered.

In *United States v. Jeronimo-Bautista*, 425 F.3d 1266 (10th Cir. 2005), we held that applying § 2251(a) to the purely intrastate production of child pornography doesn't violate the Commerce Clause. 425 F.3d at 1273. There, the defendant and two other men took photographs as they sexually assaulted a 13-year-old girl in Utah.

3

*Id.* at 1268. Neither the victim nor the photographs ever crossed state lines. And there was no evidence that the defendant intended to transmit the photographs across state lines. But the camera, which wasn't manufactured in Utah, had traveled in interstate commerce. *Id.*

As here, the defendant argued that applying § 2251(a) to his solely intrastate conduct violated the Commerce Clause. *Id.* at 1267. Relying extensively on the Supreme Court's then-recent decision in *Gonzales v. Raich*, 545 U.S. 1 (2005), we rejected that argument. *Jeronimo-Bautista*, 425 F.3d at 1271-73. In *Raich*, the Court upheld Congress' power to regulate the purely local production, possession, and consumption of medical marijuana. 545 U.S. at 8-9. In doing so, the Court relied in part on *Wickard v. Filburn*, 317 U.S. 111 (1942). *Raich*, 545 U.S. at 17. In *Wickard*, the Court upheld Congress' power to regulate a farmer's local production of wheat intended solely for personal consumption, reasoning that "even if [the farmer's] activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce." 317 U.S. at 118, 125, 129.

Drawing on *Raich* and *Wickard*, we concluded in *Jeronimo-Bautista* that "the intrastate production of child pornography could, in the aggregate, have a substantial effect on the interstate market for such materials." 425 F.3d at 1272. We reasoned that, like the statute at issue in *Raich*, § 2251(a) regulates an economic activity because it regulates "the 'production, distribution, and consumption'" of a commodity—i.e., child pornography—"for which there is an established, and

4

lucrative, interstate market." *Id.* at 1271 (quoting *Raich*, 545 U.S. at 26). We further reasoned that Congress rationally determined that the activity of locally producing child pornography "constitute[s] an essential part of the interstate market for child pornography that is well within Congress' power to regulate." *Id.* at 1273.

Humphrey acknowledges our decision in *Jeronimo-Bautista*. But he urges us to overturn it in light of *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012) (*NFIB*).[1] Relying on Chief Justice Roberts' concurring opinion,[2] he argues that *NFIB* invalidated our analysis in *Jeronimo-Bautista* by clarifying that Congress can't "regulate *inactivity* in an interstate market, regardless of the potential economic impact of such." Aplt. Br. 8. And, he argues, because he never distributed child pornography across state lines, applying § 2251(a) to his conduct impermissibly regulates his "non-participation or inactivity[] in the relevant interstate market." *Id.* at 9.

We disagree. In *NFIB*, the Court considered a Commerce Clause challenge to the Patient Protection and Affordable Care Act's individual mandate provision. In a

---

[1] The general rule against overturning the decision of another panel absent en banc consideration doesn't apply "when the Supreme Court issues an intervening decision that is 'contrary' to or 'invalidates our previous analysis.'" *United States v. Brooks*, 751 F.3d 1204, 1209 (10th Cir. 2014) (first quoting *United States v. Meyers*, 200 F.3d 715, 720 (10th Cir. 2000); then quoting *United States v. Shipp*, 589 F.3d 1084, 1090 n.3 (10th Cir. 2009)).

[2] To analyze Humphrey's argument, we assume without deciding that Chief Justice Roberts' opinion constitutes the Court's opinion on the Commerce Clause's reach. *See White*, 782 F.3d at 1124 n.3 (declining to decide whether any *NFIB* opinions on Commerce Clause were more than dicta); *United States v. Robbins*, 729 F.3d 131, 135 (2d Cir. 2013) (questioning whether *NFIB* says anything binding about Commerce Clause, but assuming without deciding that Chief Justice Roberts' statements are holdings of Court).

fractured opinion, five justices agreed on one point: The Commerce Clause broadly authorizes Congress to regulate commercial activity, but not to compel individuals to engage in commercial activity. *See NFIB*, 132 S. Ct. at 2587 (Roberts, C.J., concurring) (stating that Commerce Clause doesn't authorize Congress to "compel[] individuals to *become* active in commerce by purchasing a product"); *id.* at 2644 (Scalia, J., dissenting) (stating in dissent joined by three other justices that "one does not regulate commerce that does not exist by compelling its existence"). All five justices characterized the individual mandate provision as an impermissible attempt to force individuals to participate in the commercial activity that Congress sought to regulate. *Id.* at 2590-91 (Roberts, C.J., concurring); *id.* at 2649 (Scalia, J., dissenting).

But those same five justices recognized the breadth of Congress' power to regulate commercial activity. And all five justices described *Wickard*'s ruling as exemplifying the outer edge of that power. *See NFIB*, 132 S. Ct. at 2588 (Roberts, C.J., concurring) (noting that unlike individuals in *NFIB* who chose not to buy health insurance, "[t]he Farmer in *Wickard* was at least actively engaged in the production of wheat, and the [g]overnment could regulate that activity because of its effect on commerce"); *id.* at 2648 (Scalia, J., dissenting) (noting that *Wickard* involved commercial activity—i.e., the production of wheat—rather than commercial inactivity—i.e., "the failure to grow wheat"). Here, Humphrey didn't fail to produce child pornography; he actively engaged in producing it. That makes him akin to the farmer in *Wickard*, not the uninsured individuals in *NFIB*.

6

More importantly, in rejecting the government's attempt in *NFIB* to stretch the

Commerce Clause's reach beyond *Wickard*'s outer boundary, all five justices

reaffirmed the principles from *Raich* and *Wickard* that guided our analysis in

*Jeronimo-Bautista*. First, Congress' power to regulate commerce "extends to

[intrastate] activities that 'have a substantial effect on interstate commerce'"—even if

those activities impact interstate commerce "only when aggregated with similar

activities of others." *NFIB*, 132 S. Ct. at 2585-86 (Roberts, C.J., concurring) (quoting

*United States v. Darby*, 312 U.S. 100, 119 (1941)). Second, that power includes the

authority to regulate "those who by some preexisting activity bring themselves within

the sphere of federal regulation." *Id.* at 2592. Third, and finally, that power includes

the authority to regulate intrastate conduct when failing to do so would "substantially

undercut" Congress' attempt to regulate the relevant interstate market. *Id.* at 2593.

In short, to the extent that *NFIB* says anything binding about the reach of

Congress' Commerce Clause authority, it doesn't say anything to suggest that reach

no longer extends as far as *Raich* and *Wickard* held. Thus, contrary to Humphrey's

argument, *NFIB* didn't invalidate our analysis in *Jeronimo-Bautista*. Nor did it

undermine our conclusion there that Congress has the power to regulate locally-

produced child pornography because (1) there is a thriving interstate market for it,

and (2) Congress has a rational basis for determining that the impact of not regulating

the purely intrastate production of child pornography would substantially affect

interstate commerce. *Jeronimo-Bautista*, 425 F.3d at 1271-72.

In any event, even assuming that *NFIB* cast doubt on *Raich*'s continuing validity, the Court's more recent decision in *Taylor v. United States*, 136 S. Ct. 2074 (2016), erases that doubt.[3] There, the defendant challenged two Hobbs Act robbery convictions.[4] Specifically, he argued that the government failed to prove that by robbing two Virginia drug dealers, he affected or attempted to affect commerce as required by the Hobbs Act's commerce element. *Id.* at 2078-79.

The Court disagreed. *Id.* at 2081-82. In doing so, it reiterated that Congress has the power to regulate activities that "substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Id.* at 2079 (citing *Wickard*, 317 U.S. at 125); *see also id.* at 2081 ("[I]t makes no difference under [the Court's Commerce Clause] cases that any actual or threatened effect on commerce in a particular case is minimal.").

In considering the reach of the Hobbs Act's commerce element, the Court noted it need only "graft [the Court's] holding in *Raich* onto the commerce element." *Id.* at 2080. The Court said, "*Raich* established that the purely intrastate production and sale of marijuana is commerce" subject to federal regulation. *Id.* Thus, the Court held, "if the [g]overnment proves beyond a reasonable doubt that a robber targeted a

---

[3] After the parties submitted their opening and response briefs, the government submitted a letter directing us to the Supreme Court's recent decision in *Taylor*. *See* Fed. R. App. P. 28(j). On the same day the government filed that letter, Humphrey sought and obtained an extension of time to file his optional reply brief. But Humphrey neither filed a reply brief nor otherwise responded to the government's letter.

[4] "The Hobbs Act makes it a crime for a person to affect commerce, or to attempt to do so, by robbery." *Taylor*, 136 S. Ct. at 2077 (citing 18 U.S.C. § 1951(a)).

8

marijuana dealer's drugs or illegal proceeds," the government proves the commerce element—i.e., "that commerce over which the United States has jurisdiction was affected." *Id.* at 2080-81. Thus, *Taylor* bolsters our conclusion that *NFIB* didn't implicitly abrogate *Raich*.

Finally, as the government points out, every other circuit to address the issue has concluded that *NFIB* didn't alter Congress' authority to regulate the intrastate production of child pornography. *See United States v. Sullivan*, 797 F.3d 623, 631-32 (9th Cir. 2015) (concluding that *NFIB* doesn't apply to regulating production of intrastate child pornography "because § 2251 and § 2252 do not compel commerce, but merely regulate an activity that Congress could rationally determine would affect interstate commerce, taken in the aggregate"), *cert. denied* 136 S. Ct. 2408 (2016); *United States v. Parton*, 749 F.3d 1329, 1331 (11th Cir. 2014) (concluding that Chief Justice Roberts' rationale in *NFIB* regarding Congress' inability to regulate the "inactivity of . . . uninsured individuals" doesn't apply to § 2251(a), which criminalizes activity of producing child pornography); *United States v. Rose*, 714 F.3d 362, 371 (6th Cir. 2013) (reasoning that *NFIB* didn't abrogate *Raich*'s holding that Congress can "regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce"; and noting that unlike statutory provision at issue in *NFIB*, § 2251(a) doesn't compel "into commerce individuals who have refrained from commercial activity").

We now join these circuits in holding that *NFIB* didn't abrogate *Raich* or otherwise impact Congress' ability to regulate the intrastate production of child

9

pornography. Because we remain bound by *Jeronimo-Bautista*, we reject Humphrey's argument and affirm the district court's denial of his motion to dismiss.