**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 29 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   15-50352 |
| Plaintiff-Appellee, | D.C. No. 2:13-cr-00511-SJO-5 |
| v. | |
| SHAY PANIRY, AKA Alex Paniry, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted July 10, 2017
Pasadena, California

Before:  PREGERSON, REINHARDT, and WARDLAW, Circuit Judges.

Shay Paniry appeals his conviction and sentence following a jury trial.  We

have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

**1.**     The district court did not err in denying Paniry's motion for a

judgment of acquittal under Federal Rule of Criminal Procedure 29 based on

---

*     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

insufficiency of the evidence supporting his conviction for conspiracy to distribute or possess with intent to distribute a controlled substance. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846. Paniry contends that there was insufficient evidence that he agreed to participate in a drug-trafficking conspiracy, or that he understood the scope of the conspiracy as alleged. However, there was sufficient circumstantial evidence for a reasonable juror to conclude that Paniry agreed to distribute at least five kilograms of a mixture and substance containing a detectable amount of cocaine. Paniry was involved in several of the drug transactions, including cash deliveries and the delivery of the trap car, and he also discussed future deliveries. Circumstantial evidence showed that Paniry interacted with co-defendant Efrain Aispuro during the conveyance of the trap car, and Aispuro had been told that the car contained a "load" of cocaine. Paniry knew the exact amount of money he delivered when he paid undercover detective Manuel Carrera for the drugs. Paniry spoke frequently on the phone with co-defendant Moshe Matsri during the drug deals, and this extensive coordination is "strong circumstantial proof of agreement." *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997) ("[A]s the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases."). Accordingly, a rational trier of fact could have found beyond a reasonable doubt,

based on this circumstantial evidence, that Paniry agreed to participate in the conspiracy, and understood its objects. *See United States v. Lapier*, 796 F.3d 1090, 1101 (9th Cir. 2015).

2.    Nor did the district court err in denying Paniry's motion for Rule 29 acquittal based on insufficiency of the evidence that he attempted to distribute at least five kilograms of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), 846. Paniry argues that there was no evidence he believed the trap car contained cocaine. However, Paniry's involvement in the conveyance of the trap car and his interactions with Aispuro and Matsri provided sufficient circumstantial evidence for a reasonable juror to conclude that Paniry intended to distribute at least five kilograms of cocaine by delivering the trap car.

3.    There was sufficient evidence to support the jury's finding that Paniry believed the transactions on which his conspiracy and attempt-to-distribute convictions were based involved at least five kilograms of cocaine, for the reasons described above.

4.    The district court did not plainly err in applying a three-level sentencing enhancement based on Paniry's control over other participants in the drug transactions. *See* U.S.S.G. § 3B1.1(b). The district judge could have inferred from Paniry's oversight of co-defendant Hector Gomez-Navarro during the cash

3

drops that Paniry was acting in a supervisory role, and the court was not required to credit Paniry's testimony that he was merely acting as Matsri's messenger. Similarly, the district judge could have inferred from Paniry's interactions with Aispuro during the delivery of the trap car that he was supervising Aispuro. Paniry instructed Aispuro what to tell undercover detective Ray Camuy, and at some point took over driving the trap car himself. Accordingly, the district court's application of the control enhancement was not plain error.

5. The district court did not plainly err in issuing the jury instruction on whether the quantity of cocaine involved in the drug-trafficking conspiracy equaled or exceeded five kilograms. Paniry contends that the district judge should have instructed the jury that Paniry was required to believe that the drugs weighed five kilograms or more. However, the standard is not whether the defendant believed that a certain amount of drugs was involved, but rather whether he "could reasonably foresee that such an amount would be involved in the transactions of which he was guilty." *United States v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003) (quoting *United States v. Becerra*, 992 F.2d 960, 966–57 & n.2 (9th Cir. 1993)). Paniry also argues that the jury instruction was confusing because no drugs actually changed hands. However, we find no authority suggesting that such

4

should be the rule with respect to sting operations. The district court did not plainly err.

6.     The district court did not err in denying Paniry's motion for a Rule 29 judgment of acquittal based on insufficiency of the evidence supporting his conviction for conspiring to launder money. *See* 18 U.S.C. §§ 1956(a), 1956(h). Paniry contends that there was no evidence that he agreed to participate in the conspiracy because there was no evidence that he knew his cash deliveries were part of a larger money-laundering transaction, or that the money being transferred derived from drug-dealing activities. However, the degree of coordination required to carry out the "Hawala" money-laundering transaction, paired with Paniry's close coordination with Matsri, who believed that the funds at issue were the proceeds of felonious drug trafficking, was sufficient circumstantial evidence for a rational trier of fact to find beyond a reasonable doubt that Paniry understood the nature of the transactions, and agreed to participate.

7.     Nor did the district court err in denying Paniry's motion for a Rule 29 judgment of acquittal based on Paniry's claim of insufficiency of the evidence supporting his substantive money laundering convictions. *See* 18 U.S.C. §§ 1956(a)(2)(A), 1956(a)(3)(A), 1956(a)(3)(B). Paniry argues that there was no evidence that the government represented to him that the proceeds of the

5

transactions were derived from unlawful activity. However, DEA Agent Willivan Rojas testified that he told Matsri that the money came from an international cocaine deal, and there was adequate circumstantial evidence to infer that Paniry understood this to be the case as well, as described above. To the extent Paniry argues that the evidence was insufficient because the government did not directly represent the source of the funds to him, he misreads the statute. *See* 18 U.S.C. §§ 1956(a)(2), 1956(a)(3).

8.     Paniry's challenge to the money-laundering conspiracy jury instruction fails because he jointly submitted the proposed instruction with the government. *See United States v. Guthrie*, 931 F.2d 564, 567 (9th Cir. 1991) ("When the defendant himself proposes the jury instruction he later attacks on appeal, review is denied under the 'invited error' doctrine.").

9.     The district court did not plainly err in applying a two-level upward sentencing enhancement for "sophisticated laundering." U.S.S.G. § 2S1.1(b)(3). While Paniry argues that the laundering was unsophisticated because it involved only simple cash hand-offs, the entire scheme involved multiple levels of transactions designed to make funds represented to be derived from criminal activity seem legitimate. *See id.* Thus, the district court could have concluded that the adjustment for sophisticated laundering applied.

**10.** The district court did not err in denying Paniry's motion for a judgment of acquittal based on insufficiency of the evidence supporting his convictions for attempted extortion and conspiracy to commit extortion. *See* 18 U.S.C. § 1951(a). Paniry argues that the government failed to present sufficient evidence that the supposed extortion of "Vegas Chad" had some effect on interstate commerce. However, Rojas testified that he represented to Matsri that Vegas Chad was his cocaine customer. The intrastate trade in cocaine is "commerce over which the United States has jurisdiction," and an "attempt[] to affect even the intrastate sale" of cocaine is therefore an "attempt[] to affect commerce over which the United States has jurisdiction." *Taylor v. United States*, —U.S.—, 136 S. Ct. 2074, 2080 (2016). Thus, a rational trier of fact could have found beyond a reasonable doubt that Paniry's attempt to collect a debt from Vegas Chad met the interstate commerce element of 18 U.S.C. § 1951(a). To the extent Paniry claims that the government was required to provide a different jury instruction if it wished to convict on an "indirect effect" theory, this claim finds no basis in our precedent.

**11.** The district court did not plainly err in applying a one-level sentencing enhancement under U.S.S.G. § 2B3.2(b)(2) on the ground that Paniry demanded an amount exceeding $20,000 in the extortion of Vegas Chad. The

7

district court could have inferred a demand from the language Paniry used in his telephone conversation with Vegas Chad.

**12.** The district court did not plainly err in applying a two-level aggravated role sentencing enhancement for Paniry's extortion offense under U.S.S.G. § 3B1.1(b). Paniry argues there was no evidence that he supervised the two men who vandalized Vegas Chad's Ford Mustang. On the contrary, there was ample circumstantial evidence that he instructed the men which car to vandalize and how to do it. Thus, it was not plain error for the district court to find that Paniry played a managerial role in the vandalism.

**AFFIRMED.**