20-3659-cr
United States v. Jean

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of April, two thousand twenty-two.

PRESENT:

> BARRINGTON D. PARKER,
> MICHAEL H. PARK,
> BETH ROBINSON,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

*Appellee,*

v.                                                    20-3659

SPENCER JEAN, also known as CASH,

*Defendant-Appellant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | JOSEPH FERRANTE, Keahon, Fleischer & Ferrante, Hauppauge, NY. |
| **FOR APPELLEE:** | ANTHONY BAGNUOLA (David C. James, *on the brief*), *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

The government's proof at trial, viewed in the light most favorable to the government, established the following: Ryan Goetz met Defendant Spencer Jean, whom he knew as "Cash," at a halfway house, and learned that Jean had experience selling drugs. After both left the halfway house, Goetz contacted Jean to sell him marijuana, and they agreed to meet at Goetz's house the next day. Jean called Goetz twice the next morning to inform him of his estimated time of arrival. Shortly after the second call, Goetz saw Jean standing in his doorway. Jean told Goetz to "give me your shit now," leading to a physical struggle, which ended with Jean shooting Goetz in the leg and fleeing with Goetz's marijuana. App'x at 368.

After trial, the jury convicted Jean of five counts: (1) Hobbs Act robbery, 18 U.S.C. § 1951(a); (2) discharging a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(iii); (3) possession of marijuana with intent to distribute, 21 U.S.C. § 841(b)(1)(D); (4) conspiracy to obstruct justice, 18 U.S.C. § 1512(k); and (5) obstruction of justice, 18 U.S.C. § 1512(c)(2). After the verdict, Jean moved for acquittal and a new trial under Federal Rules of Criminal Procedure 29 and 33. He argued that the government violated Rule 16 by failing to provide an adequate disclosure about the opinion of the government's cell-site expert, David M. Magnuson, and that the testimony of Goetz and that of another witness, Nastacia McPherson, was not credible because it was not corroborated by Jean's phone records.

The district court denied the motions. The court found that there was no Rule 16 violation because Jean "was well aware of what both Magnuson's testimony and any accompanying records

2

or slides would show," and that even if there had been a technical violation, it would not warrant a new trial because "the Court allowed [Jean] the time he requested to review the information." Special App'x at 57. The court also found that the discrepancies between the witnesses' testimony and the phone records were minor and that a reasonable jury could have credited the witness testimony. Jean timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Jean raises six arguments on appeal, all of which are meritless. *First*, Jean argues that the district court abused its discretion by admitting Magnuson's testimony in violation of Rule 16, which requires the government to provide the defendant "a written summary" of expert testimony describing "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). A Rule 16 violation, however, "is not grounds for reversal unless the violation caused the defendant substantial prejudice," which requires the defendant to "demonstrate that the untimely disclosure of the evidence adversely affected some aspect of his trial strategy." *United States v. Walker*, 974 F.3d 193, 203–04 (2d Cir. 2020) (cleaned up).

Even if there had been a Rule 16 violation, Jean cannot demonstrate substantial prejudice from the allegedly untimely disclosure of Magnuson's testimony. As the district court noted, Jean had the underlying cell-site data months before trial, he knew well ahead of time that the government would call an expert to discuss it, and it was obvious that the expert would testify about Jean's location around the time of the shooting and attempt to place him at the scene of the crime. Moreover, the government turned over Magnuson's slide presentation two days before he testified, and the court granted Jean's counsel the time he requested to review it. Notably, defense counsel did not object to the introduction of Magnuson's testimony or the cell-site data on which

3

he relied. Under these circumstances, Jean cannot demonstrate substantial prejudice, so we affirm the district court's rejection of Jean's Rule 16 argument.[1]

*Second*, Jean argues that the government committed prosecutorial misconduct by knowingly eliciting false testimony from Goetz and Nastacia McPherson, another government witness. In order for a new trial to be granted on the ground that a witness committed perjury, the defendant must show that "(i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the perjury at the time of trial; and (iv) the perjured testimony remained undisclosed during trial." *United States v. Josephberg*, 562 F.3d 478, 494 (2d Cir. 2009) (cleaned up).

Perjury is more than false testimony. Perjury requires "testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). "Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury." *Id.*

Even if Goetz testified falsely that his telephone call with Jean to plan a marijuana deal occurred the evening before the shooting, Jean still could not demonstrate that Goetz intentionally lied and that his testimony about the timing of the communication was material in light of the other

---

[1] We also reject Jean's arguments that the underlying cell-site data should have been excluded because the phone records were missing cell-site data and the records that contained the missing data were not turned over. The government turned over three sets of phone records. Although the second set of phone records were missing the cell-site data for certain phone calls, including at least one call between Jean and Goetz, the first set of phone records the government turned over a few months before trial included the missing data. And contrary to Jean's argument, the third set of phone records, which also contained the cell-site data missing from the second set, were disclosed by the government two weeks before trial. Jean also claims that the first and third set of records were obtained in violation of Jean's Fourth Amendment rights, but he provides no explanation or support for this assertion. We deem this argument waived because it was "not sufficiently argued in the briefs." *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

evidence showing that they planned to consummate a marijuana deal some time before Jean arrived at Goetz's home. Although Jean's phone records do not reflect a call between Goetz and Jean until the day of the shooting,[2] a video of marijuana that Goetz claims he sent to Jean via Snapchat was introduced as evidence at trial and Goetz testified that he sent that video to Jean the evening before the shooting. Additionally, McPherson testified that early the next morning, Jean told her over the phone that he was going to see Goetz because Goetz had marijuana.[3]

Jean also argues that McPherson committed perjury when she testified that she spoke with Jean after the shooting as they traveled in two separate cars to a third person's house.[4] Although this phone call does not appear in Jean's phone records, McPherson testified that they called using FaceTime. Jean has not demonstrated that a FaceTime call would be reflected in Jean's cell phone records. In addition, substantial other testimony corroborates McPherson's testimony that during the call, Jean admitted that he "had no choice" but to shoot because "the guy rushed him." Goetz's testimony independently showed that Goetz and Jean had a physical altercation that resulted in a shooting, and other portions of McPherson's testimony inculpated Jean—for example, she testified that Jean later removed a white bag of marijuana from the back of the car and removed a gun from the white bag. We thus reject Jean's prosecutorial misconduct argument because he fails to show

---

[2] We note that Jean does not address the possibility that they called using a method that is not reflected on Jean's cell phone records.

[3] Nor can Jean demonstrate Detective Timothy Conroy's apparently inaccurate testimony that Jean's phone records reflected calls with Goetz the day before the shooting was perjurious. In any event, the portion of Conroy's testimony at issue was elicited by defense counsel and not the prosecution.

[4] Jean also claims that McPherson committed perjury when she testified that on the morning of the shooting, Jean told her that he was planning to see Goetz. He argues that Jean could not possibly have planned to see Goetz because the phone records do not reflect any calls between Jean and Goetz until after this phone call with McPherson. Jean fails to demonstrate perjury, however, because the video and Goetz's testimony are evidence that Jean and Goetz did communicate about a marijuana deal the day before the shooting.

that the allegedly false testimony by Goetz and McPherson was either intentionally false or material.

*Third*, Jean argues that he received ineffective assistance of counsel because, among other things, his attorney failed to notice the missing cell-site data in the phone records, did not retain a cell-site expert, and did not ask for a longer continuance to review Magnuson's slide presentation. In order for a defendant to establish ineffective assistance of counsel: "(1) he must show that counsel's performance was deficient," and "(2) he must show that the deficient performance prejudiced the defense." *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (cleaned up).

We are not inclined to resolve claims of ineffective assistance of counsel when such claims are presented for the first time by new counsel on direct appeal. *See United States v. Williams*, 205 F.3d 23, 35 (2d Cir. 2000) (expressing this Court's "baseline aversion to resolving ineffectiveness claims on direct review" except in narrow circumstances) (citation omitted); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under [28 U.S.C. § 2255] is preferable to direct appeal for deciding claims of ineffective assistance.").

In this case, the government offers theories about the trial attorney's motives and strategies to explain various actions or inactions by trial counsel, but we do not have the benefit of a developed record on the subject. Because we cannot properly evaluate Jean's ineffective assistance of counsel claim on the record before us, we decline to consider the claim on direct appeal.

*Fourth*, Jean argues that there was insufficient evidence that Jean knew that Goetz was a drug dealer and that Jean stole his drugs, which the government needed to prove to satisfy the jurisdictional element of Hobbs Act robbery. *See Taylor v. United States*, 579 U.S. 301, 309

(2016) ("In order to obtain a conviction under the Hobbs Act for the robbery or attempted robbery of a drug dealer . . . . it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds."). We disagree. Among other evidence, Goetz sent Jean a video of marijuana in advance of their deal and testified that they discussed the drug deal leading up to the shooting, Goetz testified that Jean stole his marijuana, and McPherson testified that she saw Jean remove a white bag of marijuana from a car he was driving shortly after the shooting.

*Fifth*, Jean argues that the jury's special interrogatory answers finding that he discharged but did not brandish the firearm was repugnant because in order to discharge a firearm, one must first brandish it. This is incorrect. Brandishing requires the intent to "intimidate," while discharging does not include an intent requirement. 18 U.S.C. § 924(c)(4); *see also Dean v. United States*, 556 U.S. 568, 572–73 (2009). The jury thus could have found that during the physical altercation, Jean shot Goetz immediately after producing the firearm without using it to intimidate Goetz before firing.

*Sixth*, Jean argues that the district court erred by denying his speedy trial motion because the government filed an untimely indictment. *See* 18 U.S.C. §§ 3161(b), 3162(a)(1). "[C]ourts will not dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint, and this applies even if the indictment charges arise from the same criminal episode as those specified in the original complaint." *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004) (cleaned up). Here, although the charges in the complaint and the indictment arose from the same criminal episode, the complaint charged Jean with being a felon in possession of a firearm while the indictment charged Jean with crimes that "require[d] proof of elements distinct from or in addition to those necessary to prove the crime[] pleaded in the complaint." *Id.* at 453.

We have considered the remainder of Jean's arguments and find them to be without merit.

7

Accordingly, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court