AGEE, Circuit Judge, dissenting:
 

 Like the majority, I believe that the proper outcome in this case naturally flows from the Supreme Court's Commerce Clause precedent and the terms of
 
 18 U.S.C. § 249
 
 (a)(2)(B)(iv)(I). Unlike the majority, I conclude that Congress' power under the Commerce Clause does not permit Hill's prosecution under that statute. This is so for two principal reasons. First, unlike the other provisions of § 249(a)(2)(B) -and, indeed, unlike "jurisdictional elements" in other statutes- § 249(a)(2)(B)(iv)(I) does not limit the class of activities being regulated to acts that fall under Congress' Commerce Clause power. Second, the root activity § 249(a)(2) regulated in this case-a bias-motivated punch-is not an inherently economic activity and therefore not within the scope of Congress' Commerce Clause authority. For the reasons expounded below, I would affirm the district court's decision to vacate Hill's conviction and respectfully dissent.
 

 I.
 

 A.
 

 The district court held that § 249(a)(2) was unconstitutional as applied to Hill in this case. I agree. And while my analysis of § 249(a)(2)(B)(iv)(I) would likely implicate other prosecutions brought under this particular provision, it is sufficient in this case to determine that the statute operated in a way that was unconstitutional as applied to Hill.
 
 See
 

 Seling v. Young
 
 ,
 
 531 U.S. 250
 
 , 271,
 
 121 S.Ct. 727
 
 ,
 
 148 L.Ed.2d 734
 
 (2001) ("[A]n 'as-applied' challenge is a claim that a statute, by its own terms, infringes constitutional freedoms in the circumstances of a particular case." (alterations, emphasis, and internal quotation marks omitted)).
 

 B.
 

 "[T]he Constitution creates a Federal Government of enumerated powers," reserving, among other functions, general police powers to the sovereign States.
 
 United States v. Lopez
 
 ,
 
 514 U.S. 549
 
 , 552,
 
 115 S.Ct. 1624
 
 ,
 
 131 L.Ed.2d 626
 
 (1995). An enumerated power the Constitution specifically delegates to Congress is the ability to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3. This case implicates Congress' power to regulate commerce "among the several States."
 

 Id.
 

 The Supreme Court has recognized that this power to regulate interstate commerce consists of "three broad categories": first, "the use of the channels of interstate commerce"; second, "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and third, "those activities having a substantial relation to interstate commerce,
 
 i.e.
 
 , those activities that substantially affect interstate commerce."
 
 Lopez
 
 ,
 
 514 U.S. at 558-59
 
 ,
 
 115 S.Ct. 1624
 
 (citation omitted). This case involves only the third category: "activities that substantially affect interstate commerce."
 

 Id.
 

 at 559
 
 ,
 
 115 S.Ct. 1624
 
 .
 

 When "a general regulatory statute bears a substantial relation to commerce, the
 
 de minimis
 
 character of individual instances arising under that statute" does not deprive Congress of the ability to regulate that activity.
 
 Gonzales v. Raich
 
 ,
 
 545 U.S. 1
 
 , 17,
 
 125 S.Ct. 2195
 
 ,
 
 162 L.Ed.2d 1
 
 (2005) (quoting
 
 Lopez
 
 ,
 
 514 U.S. at 558
 
 ,
 
 115 S.Ct. 1624
 
 ). It follows from this principle that legislation regulating activities substantially affecting interstate commerce is deemed a proper exercise of Congress' Commerce Clause power even when the statute's scope regulates purely intrastate economic activity,
 
 Lopez,
 

 514 U.S. at 559-60
 
 ,
 
 115 S.Ct. 1624
 
 , but only so long as the regulated activities "are part of an economic 'class of activities' that have a substantial effect on interstate commerce,"
 
 Raich
 
 ,
 
 545 U.S. at 17
 
 ,
 
 125 S.Ct. 2195
 
 ;
 
 Wickard v. Filburn
 
 ,
 
 317 U.S. 111
 
 , 125,
 
 63 S.Ct. 82
 
 ,
 
 87 L.Ed. 122
 
 (1942) ("[E]ven if [an] activity be local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce ...."). The Supreme Court has permitted such aggregation of individual instances to create the requisite substantial effect on interstate commerce "only where [the regulated] activity is economic in nature."
 
 Taylor v. United States
 
 , --- U.S. ----,
 
 136 S. Ct. 2074
 
 , 2079-80,
 
 195 L.Ed.2d 456
 
 (2016) (quoting
 
 United States v. Morrison
 
 ,
 
 529 U.S. 598
 
 , 613,
 
 120 S.Ct. 1740
 
 ,
 
 146 L.Ed.2d 658
 
 (2000) ).
 

 In determining whether a statute substantially affects interstate commerce, the Supreme Court has looked to four factors: (1) Is the regulated activity inherently economic?; (2) Are there legislative findings that reveal why something that does not appear to substantially affect interstate commerce actually does so?; (3) Does the statute contain a jurisdictional element that limits the statute's reach to acts that "have an explicit connection with or effect on interstate commerce"?; and (4) Is the link between the regulated activity and interstate commerce attenuated?
 
 Lopez
 
 ,
 
 514 U.S. at 559-63
 
 ,
 
 115 S.Ct. 1624
 
 ;
 
 see
 

 Morrison
 
 , 529 U.S. at 610-17,
 
 120 S.Ct. 1740
 
 .
 

 II.
 

 A.
 

 A distinguishing factor between this statute and those at issue in
 
 Lopez
 
 and
 
 Morrison
 
 is that § 249(a)(2)(B) includes a so-called "jurisdictional element" purporting
 to require a connection between the regulated activity-here, bias-motivated assaults-and Congress' Commerce Clause power. In
 
 Lopez
 
 and
 
 Morrison
 
 , the Supreme Court held that the presence of a jurisdictional element "would ensure, through case-by-case inquiry, that the [activity being regulated] affects interstate commerce."
 
 Lopez
 
 ,
 
 514 U.S. at 561
 
 ,
 
 115 S.Ct. 1624
 
 ;
 
 see also
 

 Morrison
 
 , 529 U.S. at 611-13,
 
 120 S.Ct. 1740
 
 (observing that the Violence Against Women Act "contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"). To effectuate its intended purpose, a jurisdictional element must "limit [the statute's] reach to a discrete set of [activities being regulated] that additionally have an explicit connection with or effect on interstate commerce."
 
 Lopez
 
 ,
 
 514 U.S. at 562
 
 ,
 
 115 S.Ct. 1624
 
 . Put another way, when a jurisdictional element is the sole basis for concluding that a particular statute is constitutional, it must independently accomplish what nothing else in the statute does: compel the Court to conclude that the activity being regulated falls within Congress' Commerce Clause power.
 

 The Supreme Court ably described this relationship between the substantive and jurisdictional elements of an offense in
 
 Torres v. Lynch
 
 , --- U.S. ----,
 
 136 S. Ct. 1619
 
 ,
 
 194 L.Ed.2d 737
 
 (2016) :
 

 In our federal system, Congress cannot punish felonies generally; it may enact only those criminal laws that are connected to one of its constitutionally enumerated powers, such as the authority to regulate interstate commerce. As a result, most federal offenses include, in addition to substantive elements, a jurisdictional one .... The substantive elements primarily define the behavior that the statute calls a violation of federal law .... The jurisdictional element, by contrast, ties the substantive offense ... to one of Congress's constitutional powers ..., thus spelling out the warrant for Congress to legislate.
 

 Id.
 

 at 1624
 
 (alterations, citations, and internal quotation marks omitted).
 

 Likewise, § 249(a)(2) contains both jurisdictional and substantive elements, requiring the Government to prove both that a person "willfully cause[d] bodily injury to any person ... because of the actual or perceived religion, national origin, gender, sexual orientation, gender identity, or disability of any person," § 249(a)(2)(A), and one of the following:
 

 (i) the conduct described ... occurs during the course of, or as the result of, the travel of the defendant or the victim-
 

 (I)
 
 across a State line
 
 or national border; or
 

 (II)
 
 using a channel, facility, or instrumentality of interstate
 
 or foreign
 
 commerce
 
 ;
 

 (ii) the defendant
 
 uses a channel, facility, or instrumentality of interstate
 
 or foreign
 
 commerce
 
 in connection with the conduct described ...;
 

 (iii) in connection with the conduct described ..., the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other
 
 weapon that has traveled in interstate
 
 or foreign
 
 commerce
 
 ; or
 

 (iv) the conduct described ...-
 

 (I) interferes with commercial or other economic activity in which the victim is engaged at the time of the conduct; or
 

 (II) otherwise
 
 affects interstate
 
 or foreign
 
 commerce
 
 .
 

 § 249(a)(2)(B) (emphases added). For purposes of Hill's prosecution, the Government charged that Hill
 

 willfully cause[d] bodily injury to C.T. by assaulting [him], including by punching C.T., because of C.T.'s actual and perceived sexual orientation ...; and that, in connection with the offense, [Hill] interfered with commercial and other economic activity in which C.T. was engaged at the time of the conduct, and which offense otherwise affected interstate and foreign commerce.
 

 J.A. 19;
 
 Cf.
 
 J.A. 21. For reasons known only to the Government,
 
 it struck
 
 the language charging Hill under § 249(a)(2)(B)(iv)(II), that Hill's offense "otherwise affected interstate ... commerce," from the indictment. J.A. 21. Instead, the Government relied solely on § 249(a)(2)(B)(iv)(I), the only provision in the statute with
 
 no
 
 nexus to interstate or foreign commerce.
 

 As the above-emphasized language reflects, the text of § 249(a)(2)(B)(iv)(I) substantially differs from all of the other ways the Government can prove this element of the offense. The other subsections directly refer to "interstate" travel or commerce; further, they track the broad categories of activities the Supreme Court has identified as falling within Congress' power to regulate under the Commerce Clause.
 
 Cf.
 

 Lopez
 
 ,
 
 514 U.S. at 558-59
 
 ,
 
 115 S.Ct. 1624
 
 (identifying (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce"; and (3) "activities that substantially affect interstate commerce"). Thus, the other subsections of the statute expressly incorporate within their text Congress' constitutional authority under the Commerce Clause.
 

 In contrast, § 249(a)(2)(B)(iv)(I) is a distinct outlier without an interstate or foreign commerce statutory nexus. Nor is the unrestricted phrase "commercial or other economic activity" one of the categories the Supreme Court has identified as an area Congress can regulate under its Commerce Clause power. By § 249(a)(2)(B)(iv)(I) 's plain terms, it contains
 
 no
 
 jurisdictional nexus to Congress' authority under the Commerce Clause and thus fails under
 
 Lopez
 
 to be a "jurisdictional element" that has "an explicit connection with or effect on interstate commerce."
 

 Id.
 

 at 562
 
 ,
 
 115 S.Ct. 1624
 
 . This textual difference is meaningful: as set out in the analysis that follows, § 249(a)(2)(B)(iv)(I) encompasses conduct that falls outside Congress' Commerce Clause authority.
 

 In this regard, § 249(a)(2)(B)(iv)(I) 's text is unusual, if not unique, not just within § 249(a)(2)(B), but also within statutory language the Supreme Court and this Court have analyzed since
 
 Lopez
 
 and
 
 Morrison
 
 .
 
 [9]
 
 The plain text of those jurisdictional
 elements differs fundamentally from the provision at issue in this case because they-like the other subsections of § 249(a)(2)(B) -use language directly implicating Congress' authority to regulate interstate commerce. For example, in
 
 Jones v. United States
 
 ,
 
 529 U.S. 848
 
 ,
 
 120 S.Ct. 1904
 
 ,
 
 146 L.Ed.2d 902
 
 (2000), and
 
 Russell v. United States
 
 ,
 
 471 U.S. 858
 
 ,
 
 105 S.Ct. 2455
 
 ,
 
 85 L.Ed.2d 829
 
 (1985), the Supreme Court considered the scope of the federal arson statute, which prohibits damaging or destroying (or their attempt), "by means of fire or an explosive, any ... property
 
 used in interstate
 
 or foreign
 
 commerce
 
 or in any activity
 
 affecting interstate
 
 or foreign
 
 commerce
 
 ,"
 
 18 U.S.C. § 844
 
 (i) (emphases added). And in
 
 Taylor
 
 ,
 
 136 S. Ct. 2074
 
 , the Supreme Court reviewed the Hobbs Act, in which Congress described the jurisdictional element as the requirement of having "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce,"
 
 18 U.S.C. § 1951
 
 (a). Significantly, though, Congress defined "commerce" for purposes of the Hobbs Act to mean interstate commerce and "all other commerce over which the United States has jurisdiction."
 
 18 U.S.C. § 1951
 
 (b)(3). Read together, these two provisions in the Hobbs Act ensured that any finding as to the jurisdictional element also satisfied Congress' Commerce Clause power.
 
 Taylor
 
 , 136 S. Ct. at 2079-80 ;
 
 see also
 

 Citizens Bank v. Alafabco, Inc.
 
 ,
 
 539 U.S. 52
 
 , 56,
 
 123 S.Ct. 2037
 
 ,
 
 156 L.Ed.2d 46
 
 (2003) (analyzing the Federal Arbitration Act, which applies to "contract[s] evidencing a transaction
 
 involving commerce
 
 ,"
 
 9 U.S.C. § 2
 
 (emphasis added), and defines "commerce" to mean, in relevant part, "commerce
 
 among the several States
 
 ,"
 
 9 U.S.C. § 1
 
 (emphasis added), as "words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power").
 

 Similarly, this Circuit's cases examining whether a jurisdictional element has ensured that individual prosecutions fall within Congress' Commerce Clause power-regardless of any other factors that also did so-have all addressed statutory language directly connecting the element to Congress' constitutional authority.
 
 E.g.
 
 ,
 
 United States v. Umana
 
 ,
 
 750 F.3d 320
 
 , 336 (4th Cir. 2014) (examining murder in aid of racketeering, which requires a finding that an enterprise "engaged
 
 in
 
 ,
 
 or
 
 the activities of which
 
 affect
 
 ,
 
 interstate
 
 or foreign
 
 commerce
 
 " (emphases added) (quoting
 
 18 U.S.C. § 1959
 
 (b)(2) ));
 
 United States v. Gibert
 
 ,
 
 677 F.3d 613
 
 , 625-26 (4th Cir. 2012) (examining the federal prohibition on animal fighting, which includes the requirement that the venture was "
 
 in or affecting interstate
 
 or foreign
 
 commerce
 
 " (emphases added) (quoting
 
 7 U.S.C. § 2156
 
 (g)(1) ));
 
 United States v. Gould
 
 ,
 
 568 F.3d 459
 
 , 470-72 (4th Cir. 2009) (rejecting Commerce Clause challenge to the Sex Offender Registration and Notification Act in part because it contains the jurisdictional element of requiring that the defendant either have a prior federal sex offense
 
 or
 
 "travel[ ]
 
 in interstate
 
 or foreign
 
 commerce
 
 ,"
 
 18 U.S.C. § 2250
 
 (a) (emphases added));
 
 United States v. Buculei
 
 ,
 
 262 F.3d 322
 
 , 329 (4th Cir. 2001) (observing that
 
 18 U.S.C. § 2251
 
 contained a jurisdictional element as contemplated in
 
 Lopez
 
 because it required the jury to find that the defendant "knows or has reason to know that [the child pornography at issue] will be transported in
 
 interstate
 
 or foreign
 
 commerce or mailed
 
 " (emphasis added) (quoting
 
 18 U.S.C. § 2251
 
 (a) ));
 
 United States v.
 

 Cobb
 
 ,
 
 144 F.3d 319
 
 , 321-22 (4th Cir. 1998) (holding, in relevant part, that the federal carjacking offense was "a valid exercise of Congress' authority under the Commerce Clause" because an element of the offense was taking of motor vehicles that had been "transported, shipped, or received
 
 in interstate
 
 or foreign
 
 commerce
 
 ,"
 
 18 U.S.C. § 2119
 
 (emphases added)).
 
 [10]
 
 No such corollary exists in § 249(a)(2)(B)(iv)(I) : it does not require that the class of the victim's activities affected interstate commerce, nor does it limit the class of regulated activities to commerce over which Congress has authority. Contrary to the majority's holding, Congress cannot regulate all "commercial or other economic activity" in which a victim is engaged because Congress cannot generally regulate all commercial and economic activities based on an unsubstantiated assumption that they will-at some level of abstraction-affect interstate commerce.
 
 Lopez
 
 ,
 
 514 U.S. at 559
 
 ,
 
 115 S.Ct. 1624
 
 (holding that "in order to be within Congress' power to regulate it under the Commerce Clause," an activity must "substantially affect," and not just "affect," interstate commerce);
 
 see also
 

 Raich
 
 ,
 
 545 U.S. at 22
 
 ,
 
 125 S.Ct. 2195
 
 . Simply put, that the regulated activity interfered with someone else's "commercial" or "economic" activity is insufficient, else
 
 Lopez
 
 's third category of Commerce Clause power would have no meaning. Indeed, the Supreme Court has expressly and repeatedly cautioned against conflating regular commerce and commerce over which Congress has authority:
 

 [T]he scope of the interstate commerce power must be considered in the light of our dual system of government and may not be extended so as to embrace effects upon interstate commerce so indirect and remote that to embrace them, in view of our complex society, would effectually obliterate the distinction between what is national and what is local and create a completely centralized government.
 

 Lopez
 
 ,
 
 514 U.S. at 557
 
 ,
 
 115 S.Ct. 1624
 
 (internal quotation marks omitted).
 

 Section 249(a)(2)(B)(iv)(I) does not ensure that prosecutions under it are "sufficiently tied to interstate commerce [as opposed to regulating] a wider, and more purely intrastate, body of violent crime."
 
 Morrison
 
 , 529 U.S. at 613,
 
 120 S.Ct. 1740
 
 ;
 
 see
 

 Lopez
 
 ,
 
 514 U.S. at 562
 
 ,
 
 115 S.Ct. 1624
 
 (describing the requisite jurisdictional element as "limit[ing] [the statute's] reach to a discrete set of [regulated activities] that additionally
 
 have an explicit connection with or effect on interstate commerce
 
 " (emphasis added)).
 

 In sum, § 249(a)(2)(B)(iv)(I) does not require that the class of activities the victim was engaged in substantially affected interstate commerce, nor does it limit the class of activities regulated to commerce over which Congress has the authority to regulate. As such, it does not do what it must do to "limit [the statute's] reach to a discrete set of [acts] that additionally have an explicit connection with or effect on interstate commerce."
 
 Lopez
 
 ,
 
 514 U.S. at 562
 
 ,
 
 115 S.Ct. 1624
 
 . Therefore, § 249(a)(2)(B)(iv)(I) is not properly labeled a "jurisdictional element" in the sense that
 
 Lopez
 
 and
 
 Morrison
 
 described as the means of "ensur[ing], through case-by-case inquiry, that the [activity] in question affects interstate commerce."
 

 Id.
 

 at 561
 
 ,
 
 115 S.Ct. 1624
 
 .
 

 Applying this principle here, because § 249(a)(2)(B)(iv)(I) is not coextensive with Congress' Commerce Clause power, the jury's finding that Hill's conduct satisfied this element of the offense did not demonstrate that Hill's conduct is within the reach of Congress' constitutional authority. In short, Hill was not charged with (or later convicted of) a crime with a stated interstate or foreign commerce jurisdictional
 basis.
 
 [11]
 
 The practical consequence of this conclusion is that a prosecution under § 249(a)(2)(B)(iv)(I) is a prosecution for an offense that does not have a constitutionally valid jurisdictional element, just as the statutes at issue in
 
 Lopez
 
 and
 
 Morrison
 
 were similarly flawed.
 

 B.
 

 1.
 

 To be a valid exercise of Congress'
 
 Commerce
 
 Clause authority, the regulated activity must have a substantial effect on interstate
 
 commerce
 
 . One way a statute can do so is if the activity being regulated is economic in nature. Put another way, certain functions can be clearly economic in nature so that a jurisdictional element is not necessary to ensure that the activity being regulated falls within Congress' Commerce Clause power.
 
 United States v. Forrest
 
 ,
 
 429 F.3d 73
 
 , 77 n.1 (4th Cir. 2005) ("[A]n effective jurisdictional element is certainly not required where ... the statute directly regulates economic activity.").
 

 When undertaking this review,
 
 Lopez
 
 and
 
 Morrison
 
 direct courts to look at the root activity being regulated without regard for the jurisdictional element. The statutes at issue in both of those cases lacked jurisdictional elements, and when discussing the factors to be considered in determining whether the statutes were valid exercises of Congress' Commerce Clause power, the Supreme Court repeatedly cited the noneconomic nature of the root activity regulated and then separately indicated that the presence of a jurisdictional element might be a distinct ground for concluding a statute regulating noneconomic activity could nonetheless be constitutional.
 
 E.g.
 
 ,
 
 Lopez
 
 ,
 
 514 U.S. at 561
 
 ,
 
 115 S.Ct. 1624
 
 (holding that knowing possession of a firearm in a school zone "by its terms has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms" and then "[s]econd" in its analysis observing that the statute "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce");
 
 accord
 

 Morrison
 
 , 529 U.S. at 613,
 
 120 S.Ct. 1740
 
 (observing first that "[g]ender-motivated crimes of violence are not, in any sense of the phrase, economic activity" and then separately observing that the statute "contains no jurisdictional element establishing that the federal cause of action is in pursuance of Congress' power to regulate interstate commerce"). While the inclusion of a proper jurisdictional element may ensure that the application of Congress' regulation of the activity is a proper exercise of its Commerce Clause power, that is a distinct question from considering whether the underlying activity being regulated is economic or noneconomic in nature.
 

 Subsequent Supreme Court and Fourth Circuit cases have followed
 
 Lopez
 
 and
 
 Morrison
 
 , keeping separate the inquiry into the economic nature of the root activity being regulated from the inquiry into the jurisdictional element's effect on the statute's constitutionality. This understanding is consistent with the Supreme Court's description in
 
 Torres
 
 that the "substantive elements [of a federal offense] primarily define the behavior that the statute calls a violation of federal law," while the "jurisdictional element ... ties [that] offense ... to one of Congress's constitutional
 powers." 136 S. Ct. at 1624 (alterations and internal quotation marks omitted). And that view has been implemented in cases like
 
 Raich
 
 , where the Supreme Court upheld the Controlled Substances Act ("CSA") based on the CSA being a comprehensive regulation of an economic activity-the drug market-without reference to the Act's jurisdictional element.
 
 545 U.S. at 25
 
 ,
 
 125 S.Ct. 2195
 
 ("[T]he activities regulated by the CSA are quintessentially economic."). And in
 
 Jones
 
 , when considering what the federal arson statute's jurisdictional element must mean so that a prosecution may be a valid exercise of Congress' Commerce Clause power, the Supreme Court operated from the premise-though did not explicit decide-that arson as a root activity could not be regulated absent that element. 529 U.S. at 850-59,
 
 120 S.Ct. 1904
 
 ;
 
 see
 

 Russell
 
 ,
 
 471 U.S. at 858-62
 
 ,
 
 105 S.Ct. 2455
 
 . Similarly, cases from this Circuit have considered separately whether the root activity being regulated was economic or noneconomic from whether the jurisdictional element would ensure the statute's constitutionality.
 
 E.g.
 
 ,
 
 Umana
 
 ,
 
 750 F.3d at
 
 336-38 ;
 
 Gibert
 
 ,
 
 677 F.3d at 624-27
 
 .
 

 In enacting
 
 18 U.S.C. § 249
 
 (a)(2), Congress sought to regulate "hate crimes" by prohibiting: "willfully caus[ing] bodily injury to any person" or attempting to do so through various described means "because of the actual or perceived" protected characteristics of the victim. § 249(a)(2). Put another way, the activity being regulated is the substantive offense of "willfully caus[ing] bodily injury" to another person based on a protected characteristic.
 

 Id.
 

 While the jurisdictional basis for Congress' regulation of that activity is an element of the offense, it is not part of the activity being regulated. It simply ties the substantive offense to Congress' Commerce Clause power.
 
 See
 

 Torres
 
 , 136 S. Ct. at 1624.
 

 The first and third subsections of § 249(a), which regulate the same root activity as § 249(a)(2), confirm this understanding of what Congress is regulating in this statute. Subsection (a)(1) prohibits "willfully caus[ing] bodily injury to any person" or attempting to do so through various described means "because of the actual or perceived" protected characteristics of the victim. § 249(a)(1). The only difference in the two substantive offenses under § 249(a)(1) and (2) is the covered protected characteristics of the victim. That difference is tied to Congress' stated constitutional grounds for enacting the two separate statutory provisions: Congress cited its authority under the Thirteenth Amendment to enact subsection (a)(1), and the protected characteristics of the victim purportedly relate back to that authority ("race, color, religion, or national origin"), while it cited its authority under the Commerce Clause to enact subsection (a)(2), where the protected characteristics of the victim are not so restricted.
 
 See
 
 Matthew Shepard & James Byrd, Jr. Hate Crimes Prevention Act, Pub. L. No. 111-84, Div. E., § 4702,
 
 123 Stat. 2190
 
 , 2836 (2009);
 
 see also
 

 United States v. Cannon
 
 ,
 
 750 F.3d 492
 
 , 497-505 (5th Cir. 2014) (discussing Congress' authority to enact legislation eliminating the badges and incidents of slavery under the Thirteenth Amendment, and holding § 249(a)(1) to be a constitutional exercise of Congress' authority);
 
 United States v. Hatch
 
 ,
 
 722 F.3d 1193
 
 , 1196-1206 (10th Cir. 2013) (same);
 
 United States v. Maybee
 
 ,
 
 687 F.3d 1026
 
 , 1030-31 (8th Cir. 2012) (same). For this reason, too, subsection (a)(1) does not have a jurisdictional element akin to subsection (a)(2)(B). Similarly, subsection (a)(3) prohibits the same conduct described in subsection (a)(1) and (a)(2)(A) if that root regulated activity occurred "within the special maritime or territorial jurisdiction of the United
 States." § 249(a)(3). By connecting the same root regulated activity to a different jurisdictional element, Congress sought to ensure that offenses brought under subsection (a)(3) were also within its enumerated powers to regulate.
 
 See
 
 U.S. Const. Art. I, § 8, cl. 10, 17 ;
 
 18 U.S.C. § 7
 
 . In sum, in enacting § 249(a), Congress plainly intended to regulate certain "hate crimes," by criminalizing the willful infliction of bodily injury based on certain protected characteristics but through distinctively separate jurisdictional grounds of authority.
 

 But the root activity § 249(a)(2) regulates is simply a subcategory of all assaults, conduct that has no discernible connection to commercial or economic activity of any sort, let alone the interstate variety.
 
 [12]
 

 See
 

 Morrison
 
 , 529 U.S. at 613,
 
 120 S.Ct. 1740
 
 ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity.");
 
 see also
 

 Bond v. United States
 
 ,
 
 572 U.S. 844
 
 , 863,
 
 134 S.Ct. 2077
 
 ,
 
 189 L.Ed.2d 1
 
 (2014) (rejecting an argument that a federal statute "reache[d] the simplest of assaults" because that would "intrude upon the police power of the States" to regulate "traditionally local criminal conduct");
 
 Brzonkala v. Va. Polytechnic Inst. & State Univ.
 
 ,
 
 169 F.3d 820
 
 , 903 (4th Cir. 1999) (en banc) (Niemeyer, J., concurring),
 
 aff'd sub nom.
 

 Morrison
 
 , 529 U.S. at 598,
 
 120 S.Ct. 1740
 
 ("Because the general police power is recognized to include the right of the States to promote the public health, safety, welfare, and morals of the State, it is not disputed that redress for assault ... traditionally falls within the States' police power." (citation omitted)). Nor is § 249(a)(2) part of a comprehensive scheme, such that regulation of both interstate and intrastate activities is necessary to ensure that an interstate market is effectively regulated.
 
 See
 

 Lopez
 
 ,
 
 514 U.S. at 561
 
 ,
 
 115 S.Ct. 1624
 
 (observing that the possession of a firearm offense was not "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated").
 

 It's also worth noting here that although the majority frames its analysis of § 249(a)(2) 's regulated activity to include the statute's jurisdictional element, they agree with the clear basic premise that "there is nothing 'inherently' economic about bias-motivated assaults."
 
 Ante
 
 at 205. Moreover, nothing in its subsequent discussion of the Supreme Court's cases conflicts with this fundamental understanding that certain acts-infliction of bodily injury being one of them-are not inherently economic activities and thus cannot be regulated absent some other means of connecting the activity to Congress' Commerce Clause power. Therefore, the majority erred in failing to separate § 249(a)(2) 's root activity from the jurisdictional element for this inquiry, which led to its equally erroneous designation of this statute as an economic regulation as opposed to a noneconomic one: one that thus fails to fall within Congress' Commerce Clause authority.
 

 2.
 

 Given its centrality to the majority's analysis, a brief discussion regarding the Supreme Court's decision in
 
 Taylor
 
 is warranted. The majority vastly overreads
 
 Taylor
 
 as a basis for concluding that Congress has power under the Commerce Clause to regulate the range of commercial
 and economic activity that § 249(a)(2)(B)(iv)(I) encompasses.
 

 The Supreme Court explicitly limited its holding in
 
 Taylor
 
 to Hobbs Act robberies in which a defendant targets drugs or drug proceeds; it did not purport to address the Government's burden for proving the jurisdictional element in other Hobbs Act cases, let alone its burden of proof for the jurisdictional element of other statutes. I take the Supreme Court at its word.
 
 See
 

 Taylor
 
 , 136 S. Ct. at 2082 ("Our holding today is limited to cases in which the defendant targets drug dealers for the purpose of stealing drugs or drug proceeds. We do not resolve what the Government must prove to establish Hobbs Act robbery where some other type of business or victim is targeted."). This limitation was directed squarely at Justice Thomas' dissenting opinion, which cautioned that the majority's "reasoning allows for unbounded regulation" akin to a general police power.
 
 Id.
 
 at 2087 (Thomas, J., dissenting). Justice Thomas' concerns have been borne out today, as the majority has construed Congress' authority under the Commerce Clause to authorize prosecutions under a purported jurisdictional element requiring no nexus to interstate commerce.
 

 In addition, the majority overlooks that
 
 Taylor
 
 -and
 
 Raich
 

 -
 
 addressed a different aspect of Congress' authority to regulate under the Commerce Clause than what is at issue in this case. Those cases specifically involved purely intrastate activities that can be regulated as part of the comprehensive regulation of an interstate economic market. There is no such market here.
 

 The analysis and result in
 
 Taylor
 
 flowed directly from the Court's analysis in
 
 Raich
 
 .
 
 Id.
 
 at 2081 ("[O]ur decision in
 
 Raich
 
 controls the outcome here. As long as Congress may regulate the purely intrastate possession and sale of illegal drugs, Congress may criminalize the theft or attempted theft of those same drugs."). In
 
 Raich
 
 , the Supreme Court considered the constitutionality of the CSA, a comprehensive regulatory scheme directed at an entire economic market.
 
 545 U.S. at 5
 
 ,
 
 125 S.Ct. 2195
 
 . Prohibiting regulation of purely intrastate applications of the CSA could leave "a gaping [enforcement] hole" that would undermine Congress' ability to effectively regulate the underlying economic activity of the interstate drug market.
 

 Id.
 

 at 22
 
 ,
 
 125 S.Ct. 2195
 
 . But
 
 Raich
 
 's holding was limited to that context, which is inapplicable to the purely noneconomic, stand-alone statute in this case.
 

 As the district court recognized, "[u]nlike the CSA, [ § 249(a)(2)(B)(iv)(I) ] does not regulate a commercial interstate market."
 
 United States v. Hill
 
 , No. 3:16-cr-00009-JAG,
 
 2018 WL 3872315
 
 , at *6 n.6 (E.D. Va. Aug. 15, 2018). Instead, it falls on "the opposite end of the regulatory spectrum" from the CSA, which was at issue in
 
 Raich
 
 , and is instead the sort of "brief, single-subject statute" that was at issue in
 
 Lopez
 
 and
 
 Morrison
 
 .
 
 Raich
 
 ,
 
 545 U.S. at 23-24
 
 ,
 
 125 S.Ct. 2195
 
 .
 
 Raich
 
 distinguished Congress' ability to regulate intrastate commerce as part of comprehensive commercial market regulation from the sort of statute at issue in
 
 Lopez
 
 . In doing so, the Court followed the same reasoning it had used in
 
 Lopez
 
 , as both cases reiterated statutes that are not "an essential part of a larger regulation of economic activity" cannot "be sustained under [Supreme Court] cases upholding regulations of activities that arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affects interstate commerce."
 
 Lopez
 
 ,
 
 514 U.S. at 561
 
 ,
 
 115 S.Ct. 1624
 
 ;
 
 accord
 

 Raich
 
 ,
 
 545 U.S. at 24
 
 ,
 
 125 S.Ct. 2195
 
 .
 
 Taylor
 
 , in turn, merely "graft[ed] [the] holding in
 
 Raich
 
 onto the commerce element of the Hobbs Act," without considering directly
 what the Commerce Clause would require of the Act's jurisdictional element in cases not involving robberies of "drug dealers for the purpose of stealing drugs or drug proceeds."
 
 Taylor
 
 ,
 
 136 S. Ct. at 2080, 2082
 
 . Consequently, it is error to apply the principles governing when such comprehensive regulatory schemes are a valid exercise of Congress' Commerce Clause power to the question of whether § 249(a)(2)(B)(iv)(I) is a valid exercise of that power.
 

 In sum, § 249(a)(2)(B)(iv)(I) cannot be sustained under
 
 Taylor
 
 and
 
 Raich
 
 (or the earlier regulatory cases
 
 Lopez
 
 had distinguished) because all those cases involved the regulation of purely intrastate activities that, as a necessary part of regulation of interstate activities, plainly fell within Congress' Commerce Clause power.
 
 See
 

 Lopez
 
 ,
 
 514 U.S. at 558
 
 ,
 
 115 S.Ct. 1624
 
 . In holding otherwise, the majority divorces
 
 Raich
 
 and
 
 Taylor
 
 from their necessary jurisprudential underpinnings. As a consequence, the majority wrongly construes
 
 Taylor
 
 to read Congress' authority under the Commerce Clause as the unrestricted power to regulate all interference with individuals engaged in any ongoing commercial or economic activity.
 

 3.
 

 As discussed in detail earlier, when examining whether prosecutions under § 249(a)(2)(B)(iv)(I) are sufficiently connected to interstate commerce to satisfy the Constitution, the noneconomic nature of the root activity regulated by § 249(a)(2) prohibits the Government from aggregating all bias-motivated assaults interfering with a victim's commercial or economic activity to satisfy its burden to show that Hill's prosecution has the requisite nexus to Congress' power under the Commerce Clause.
 
 [13]
 
 As the Court recognized in
 
 Morrison
 
 , while it "need not adopt a categorical rule against aggregating the effects of any noneconomic activity in order to decide these cases, thus far in our Nation's history [its] cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." 529 U.S. at 613,
 
 120 S.Ct. 1740
 
 ;
 
 accord
 

 Taylor
 
 , 136 S. Ct. at 2079-80 (reiterating and adhering to this principle). Because the root activity the provision regulates is noneconomic, the Government cannot aggregate its effects to satisfy the Commerce Clause's requirements.
 

 The reasons behind this constraining principle are simple: otherwise, Congress' Commerce Clause power would be limitless. The Supreme Court has "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce."
 
 Morrison
 
 , 529 U.S. at 617,
 
 120 S.Ct. 1740
 
 . This is so, in large part, because at some level of generality and aggregation, all crime can be construed to affect commerce.
 
 See
 

 Lopez
 
 ,
 
 514 U.S. at 563-64
 
 ,
 
 115 S.Ct. 1624
 
 (rejecting the Government's argument that the costs of violent crime affect the national economy because that would allow Congress to regulate "not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce"). Such a view would eliminate the necessary "distinction
 between what is truly national and what is truly local."
 
 Morrison
 
 , 529 U.S. at 617-18,
 
 120 S.Ct. 1740
 
 . As the Court explained:
 

 The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States. Indeed, we can think of no better example of the police power, which the Founders denied the National Government and reposed in the States, than the suppression of violent crime and vindication of its victims.
 

 Id.
 

 at 618
 
 (citation omitted);
 
 see also
 

 Lopez
 
 ,
 
 514 U.S. at 564-65
 
 ,
 
 115 S.Ct. 1624
 
 ;
 
 Brzonkala
 
 ,
 
 169 F.3d at 839-40
 
 ("
 
 Lopez
 
 clearly forecloses [looking to the aggregate effects of entire classes of activities] to sustain congressional regulation of
 
 noneconomic
 
 activities .... To extend such reasoning beyond the context of statutes regulating economic activities and uphold a statute regulating noneconomic activity merely because that activity, in the aggregate, has an attenuated, though real, effect on the economy, and therefore presumably on interstate commerce, would be effectively to remove all limits on federal authority, and to render unto Congress a police power impermissible under our Constitution." (citations omitted)).
 
 [14]
 

 Hill's prosecution is a prime example of the Supreme Court's concern that aggregating noneconomic crimes to arrive at the requisite connection to interstate commerce would render the Commerce Clause meaningless and indistinguishable from the constitutional defects in
 
 Lopez
 
 and
 
 Morrison
 
 . Hill's punch had no discernible impact on any commercial or economic activity scheduled to occur that day. Other workers at the distribution center absorbed the men's work, leading two witnesses to testify Hill's assault had no commercial impact whatsoever, let alone any effect on interstate commerce. First, Gina Serafini, an Amazon assistant manager, testified that the assault did not result in any missed critical pull times, or otherwise affect the ability to meet those times, which indicate that packages were shipped in the time Amazon had promised delivery. J.A. 420, 429. Second, expert witness Dr. Jonathan Whitaker testified that, based on his review of Amazon's shift performance statistics for the distribution center, "Amazon's financial and operational performance on that shift [during which the assault occurred] was no different than any other shift."
 
 [15]
 
 J.A. 448, 457-58.
 

 To allow Congress to exercise its Commerce Clause power over the noneconomic offense of a bias-motived punch would allow Congress to exercise its Commerce Clause power based on such indirect-and often, as here, non-existent-connection to commerce that it converts the Clause into a federal police power. Certainly, "congressional power under the Commerce Clause is necessarily one of degree."
 
 Lopez
 
 ,
 
 514 U.S. at 566
 
 ,
 
 115 S.Ct. 1624
 
 (internal quotation marks omitted). But at the same time, the Supreme Court has recognized that some attempts to regulate activities affecting commerce are too remote to be justified under the Commerce Clause:
 

 There is a view of causation that would obliterate the distinction between what is national and what is local in the activities of commerce. Motion at the outer rim is communicated perceptibly, though minutely, to recording instruments at the center. A society such as ours is an elastic medium which transmits all tremors throughout its territory; the only question is of their size.
 

 Id.
 

 at 567
 
 ,
 
 115 S.Ct. 1624
 
 (internal quotation marks omitted) (quoting
 
 A.L.A. Schechter Poultry Corp. v. United States
 
 ,
 
 295 U.S. 495
 
 , 554,
 
 55 S.Ct. 837
 
 ,
 
 79 L.Ed. 1570
 
 (1935) (Cardozo, J., concurring)). Hill's prosecution under § 249(a)(2)(B)(iv)(I) is such a case.
 

 I agree with the district court's conclusion that allowing Hill's conviction to stand would mean that § 249(a)(2)(B)(iv)(I) 's scope "would barely have an end, as [it] could cover any conduct that occurs anywhere, as long as the government can show that the victim was 'engaged' in some sort of economic activity."
 
 Hill
 
 ,
 
 2018 WL 3872315
 
 , at *9. This unauthorized Commerce Clause expansion would result in a host of problems including the federalization of commercial property, the regulation of all aspects of employment and workplace conduct, and even the home, should individuals be engaged in work while there.
 
 [16]
 
 That "cast[s] a very large shadow, indeed, and very little activity would remain in the exclusive province of the police powers of the state."
 

 Id.
 

 (alterations and internal quotation marks omitted). In sum, § 249(a)(2)(B)(iv)(I) regulates noneconomic activity that cannot be aggregated to arrive at the requisite substantial effect on interstate commerce to establish that it is a valid exercise of Congress' Commerce Clause power.
 

 C.
 

 Although legislative findings are not required in order to conclude that a statute has a substantial effect on interstate commerce, the Supreme Court has repeatedly recognized that such findings are relevant and often useful to a Commerce Clause inquiry.
 
 Lopez
 
 ,
 
 514 U.S. at 563
 
 ,
 
 115 S.Ct. 1624
 
 . In particular, legislative findings may allow courts to identify a substantial effect that is not "visible to the naked eye."
 

 Id.
 

 But because whether a particular regulation sufficiently affects interstate commerce remains a question of law for courts to decide, the mere existence of legislative findings containing Congress' view on the matter is not dispositive. As the district court succinctly observed: "Just because Congress says something is so does not make it so."
 
 Hill
 
 ,
 
 2018 WL 3872315
 
 , at *7 ;
 
 accord
 

 Morrison
 
 , 529 U.S. at 614,
 
 120 S.Ct. 1740
 
 ("[S]imply because Congress may conclude that a particular activity
 substantially affects interstate commerce does not necessarily make it so.") (alteration in original) (quoting
 
 Lopez
 
 ,
 
 514 U.S. at
 
 557 n.2,
 
 115 S.Ct. 1624
 
 ). Instead, courts look to whether the findings demonstrate the requisite connection to interstate commerce that the Constitution demands.
 
 Morrison
 
 , 529 U.S. at 614-15,
 
 120 S.Ct. 1740
 
 .
 

 The Government cannot rely on the legislative findings underpinning § 249(a)(2) any more than it could in
 
 Morrison
 
 . Allowing the requisite link to be established by such generic boilerplate would, "[i]f accepted, ... allow Congress to regulate any crime."
 

 Id.
 

 at 615
 
 ,
 
 120 S.Ct. 1740
 
 . The preamble to the Hate Crimes Prevention Act identified several ways Congress believed bias-motivated crimes substantially affected interstate commerce.
 
 See
 
 § 4702, 123 Stat. at 2836. Relevant here, Congress found "[t]he movement of members of targeted groups is impeded, and members of such groups are forced to move across State lines to escape the incidence or risk of such violence" and "[m]embers of targeted groups are prevented from purchasing goods and services, obtaining or sustaining employment, or participating in other commercial activity."
 
 Id.
 
 In
 
 Morrison
 
 , however, the Supreme Court rejected the sufficiency of nearly identically congressional findings with respect to gender-motivated violent crimes-that they affected interstate commerce "by deterring potential victims from traveling interstate, from engaging in employment in interstate business, and from transacting with business, and in places involved in interstate commerce; by diminishing national productivity, increasing medical and other costs, and decreasing the supply of and the demand for interstate products." 529 U.S. at 615,
 
 120 S.Ct. 1740
 
 (internal quotation marks omitted). The Supreme Court has never retreated from this rule.
 

 The same reasoning that led the Supreme Court to reject the sufficiency of the legislative findings in
 
 Morrison
 
 compels rejection of the findings in § 249(a)(2) as well: they offer no specific connection between the activity being regulated and interstate commerce and instead point to general-and ultimately unworkable-principles tied to the down-stream effects of certain crimes on interstate commerce, all of which the Supreme Court has rejected.
 
 See
 
 id.
 

 To accept this sort of finding to establish federal jurisdiction would "completely obliterate the Constitution's distinction between national and local authority" because findings offer no limiting principle.
 

 Id.
 

 If a subset of violent crimes can be regulated based on their downstream economic effects, then Congress could rely on the same finding to regulate all violent crime because "a subset of all violent crime[ ] is certain to have lesser economic impacts than the larger class of which it is a part."
 

 Id.
 

 ;
 
 see also
 

 Lopez
 
 ,
 
 514 U.S. at 563-64
 
 ,
 
 115 S.Ct. 1624
 
 (rejecting the Government's "costs of violent crime" and "national productivity" arguments to connect the regulated activity to interstate commerce as insufficient because "if we were to accept the Government's arguments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate").
 

 For these reasons, Congress' findings do not articulate the connection between a bias-motivated punch and interstate commerce so as to be sufficient under the Commerce Clause to allow Hill's prosecution.
 

 D.
 

 The attenuated link between the regulated activity and interstate commerce here demonstrates why Congress lacked the power under the Commerce Clause to regulate the class of activities at issue in
 this case. Because no intuitive connection between bias-motivated assaults and interstate commerce exists, it's necessary to "pile inference upon inference" to create one.
 
 Lopez
 
 ,
 
 514 U.S. at 567
 
 ,
 
 115 S.Ct. 1624
 
 . And that's precisely the sort of analysis the Supreme Court rejected in
 
 Lopez
 
 and
 
 Morrison
 
 .
 
 See
 

 Morrison
 
 , 529 U.S. at 617-18,
 
 120 S.Ct. 1740
 
 (reiterating that "[t]he Constitution requires a distinction between what is truly national and what is truly local").
 

 III.
 

 The analysis ends under the
 
 Lopez
 
 and
 
 Morrison
 
 factors as they clearly direct that Hill's prosecution under § 249(a)(2)(B)(iv)(I) does not fall within Congress' enumerated powers. Nonetheless, a few additional principles also support this conclusion: (1) avoiding constitutional doubt; (2) federalism; and (3) the rule of lenity.
 

 A.
 

 "[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."
 
 Jones
 
 , 529 U.S. at 857,
 
 120 S.Ct. 1904
 
 (quoting
 
 United States ex rel. Attorney Gen. v. Del. & Hudson Co.
 
 ,
 
 213 U.S. 366
 
 , 408,
 
 29 S.Ct. 527
 
 ,
 
 53 L.Ed. 836
 
 (1909) ). Justice Ginsburg, writing for the Supreme Court in
 
 Jones
 
 , relied on this "guiding principle" to reject the Government's proposed "expansive interpretation" of the federal arson statute that would have held that a building was "used in" interstate commerce because it had been used as "collateral to obtain and secure a mortgage" from an out-of-state lender; used to obtain an insurance policy from an out-of-state insurer; and used "to receive natural gas" from out-of-state sources.
 
 Id.
 
 at 855, 857,
 
 120 S.Ct. 1904
 
 . The Court observed that under this view, "hardly a building in the land would fall outside the federal statute's domain."
 

 Id.
 

 at 857
 
 ,
 
 120 S.Ct. 1904
 
 . And, in rejecting this interpretation, the Court observed that "it is appropriate to avoid the constitutional question that would arise were we to read [the statute] to render the traditionally local criminal conduct in which petitioner ... engaged a matter for federal enforcement."
 

 Id.
 

 at 858
 
 ,
 
 120 S.Ct. 1904
 
 (internal quotation marks omitted).
 

 As well illustrated by the foregoing discussion, the same concern cautions against the broad view of Congress' Commerce Clause power adopted by the majority in this case. Following the admonition of
 
 Jones
 
 , we should abjure from the constitutionally suspect approach and adopt an understanding that will avoid "grave and doubtful constitutional questions."
 

 Id.
 

 at 857
 
 ,
 
 120 S.Ct. 1904
 
 .
 

 B.
 

 I also echo the concerns expressed by Justice Stevens in his concurrence in
 
 Jones
 
 in that this case involves "the kinship between [the Court's] well-established presumption against federal pre-emption of state law, and [its] reluctance to believe Congress intended to authorize federal intervention in local law enforcement in a marginal case such as this."
 

 Id.
 

 at 859
 
 ,
 
 120 S.Ct. 1904
 
 (Stevens, J., concurring) (citation and internal quotation marks omitted). A defendant found liable of violating § 249(a)(2) is subject to a ten-year maximum sentence, while the comparable state offense is a misdemeanor with a maximum sentence of a year.
 
 See
 
 Va. Code § 18.2-57. "[A] criminal law like this ... effectively displace[s] a policy choice made by" Virginia both with respect to how to punish assaults and whether to increase the penalty based on the motive for the assault.
 

 Jones
 
 , 529 U.S. at 859,
 
 120 S.Ct. 1904
 
 (Stevens, J., concurring)
 
 .
 
 While Congress unquestionably has the power to preempt state law in lawful exercises of its constitutional powers, it cannot exceed that authority by using language that encompasses more than it can regulate. Because that is what would occur if § 249(a)(2)(B)(iv)(I) were interpreted in a way to allow Hill's conviction to stand, I cannot join the majority's opinion.
 

 C.
 

 Lastly, the majority's broad reading of § 249(a)(2)(B)(iv)(I) to encompass Hill's conduct should have been avoided under the rule of lenity. The Supreme Court "ha[s] instructed that ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."
 

 Id.
 

 at 858
 
 ,
 
 120 S.Ct. 1904
 
 (internal quotation marks omitted). Put another way, "the tie must go to the defendant."
 
 United States v. Santos
 
 ,
 
 553 U.S. 507
 
 , 514,
 
 128 S.Ct. 2020
 
 ,
 
 170 L.Ed.2d 912
 
 (2008). Because of the grave constitutional doubts surrounding application of § 249(a)(2)(B)(iv)(I) to punches that interfere with any commercial or economic activity in which a victim was engaged, the rule of lenity further counsels against allowing Hill's conviction to stand.
 

 IV.
 

 Although Hill's prosecution under § 249(a)(2)(B)(iv)(I) exceeded Congress' Commerce Clause power, no one condones Hill's underlying conduct. Workplace violence is inexcusable whatever its motive, and punches are well within a State's general police power to punish. But this case is not about the general immorality or criminality of Hill's conduct; it is about whether Congress can regulate that conduct under its power to regulate activities that have a substantial effect on interstate commerce. For the reasons set out above, Hill's prosecution lacked the requisite connection to interstate commerce to fall within Congress' Commerce Clause power. I therefore respectfully dissent and would affirm the judgment of the district court.
 

 Given the unusual language used here and that this case is the first to address this provision of § 249(a)(2), it is of no consequence that no other cases have concluded that a federal statute with such a non-distinct jurisdictional element has exceeded Congress' Commerce Clause power.
 
 See
 

 supra
 
 [203-04].
 

 What's more, regardless of how particular cases have turned out, circuit courts have uniformly recognized that the mere presence of a jurisdictional element is not dispositive to the Commerce Clause inquiry.
 
 E.g.
 
 ,
 
 United States v. Durham
 
 ,
 
 902 F.3d 1180
 
 , 1212 (10th Cir. 2018) ("Although the presence of a jurisdictional element is neither necessary nor sufficient, it is certainly helpful in determining whether the prohibited activity has a substantial effect on [interstate] commerce." (internal quotation marks omitted));
 
 United States v. Alderman
 
 ,
 
 565 F.3d 641
 
 , 648 (9th Cir. 2009) (acknowledging that "a jurisdictional hook is not always a talisman that wards off constitutional challenges" and concluding that the court must look to whether "the jurisdictional hook
 
 together with additional factors, such as congressional findings
 
 " demonstrate a substantial effect on interstate commerce (emphasis added) (internal quotation marks omitted)),
 
 cert. denied
 
 ,
 
 562 U.S. 1163
 
 ,
 
 131 S.Ct. 700
 
 ,
 
 178 L.Ed.2d 799
 
 (2011) ;
 
 United States v. Morales-de Jesus
 
 ,
 
 372 F.3d 6
 
 , 13 (1st Cir. 2004) ("Although [a statute's] jurisdictional element ensures that any prosecuted conduct has a minimal nexus with interstate commerce, that minimal nexus may not meet the substantial effect requirement of
 
 Morrison
 
 .");
 
 Norton v. Ashcroft
 
 ,
 
 298 F.3d 547
 
 , 557 (6th Cir. 2002) ("[A] jurisdictional element may establish that the enactment is in pursuance of Congress' regulation of interstate commerce. By the same measure, a jurisdictional element does not guarantee that a particular enactment will pass muster." (citations and internal quotation marks omitted));
 
 United States v. Rodia
 
 ,
 
 194 F.3d 465
 
 , 472 (3d Cir. 1999) ("A hard and fast rule that the presence of a jurisdictional element automatically ensures the constitutionality of a statute ignores the fact that the connection between the activity regulated and the jurisdictional hook may be so attenuated as to fail to guarantee that the activity regulated has a substantial effect on interstate commerce.");
 
 United States v. Wilson
 
 ,
 
 73 F.3d 675
 
 , 685 (7th Cir. 1995) ("In discussing the lack of a jurisdictional element in
 
 Lopez
 
 , the [Supreme] Court simply did not state or imply that all criminal statutes must have such an element, or that all statutes with such an element would be constitutional ...."). And even the outlier circuit court that indicated the presence of a jurisdictional element
 
 is
 
 dispositive was referring to a provision in
 
 18 U.S.C. § 922
 
 (g) that the court concluded performed its necessary role of ensuring that all prosecutions under the provision fell within Congress' Commerce Clause power.
 
 See
 

 United States v. Cunningham
 
 ,
 
 161 F.3d 1343
 
 , 1346 (11th Cir. 1998) ("[A] statute regulating noneconomic activity
 
 necessarily satisfies
 

 Lopez
 
 if it includes a jurisdictional element which would ensure, through case-by-case inquiry, that the defendant's particular offense affects interstate commerce." (emphasis in original) (citations and internal quotation marks omitted)).
 

 The federal offense of possession of a firearm or ammunition by a convicted felon,
 
 18 U.S.C. § 922
 
 (g), contains a jurisdictional element requiring proof that the defendant "possess[ed] in or affecting commerce, any firearm or ammunition," a phrase unmodified by the word "interstate."
 

 Id.
 

 Of course, most convictions for this offense rely on a different jurisdictional element given that the Government can also show "that the firearm traveled in interstate commerce at some point."
 
 United States v. Hobbs
 
 ,
 
 136 F.3d 384
 
 , 390 (4th Cir. 1998). In any event, we have held that this commerce provision is a valid exercise of Congress' Commerce Clause authority because it "requir[es] the Government to show that a nexus exists between the firearm and
 
 interstate
 
 commerce."
 
 United States v. Wells
 
 ,
 
 98 F.3d 808
 
 , 811 (4th Cir. 1996) (emphasis added). Our analysis relied in part on
 
 Scarborough v. United States
 
 ,
 
 431 U.S. 563
 
 ,
 
 97 S.Ct. 1963
 
 ,
 
 52 L.Ed.2d 582
 
 (1977), in which the Supreme Court analyzed the predecessor statute to
 
 18 U.S.C. § 922
 
 (g) and held that Congress' prohibition of firearm possession "in commerce or affecting commerce" indicated its intent to regulate to the full scope of its power under the Commerce Clause.
 
 Scarborough
 
 ,
 
 431 U.S. at 567, 575
 
 ,
 
 97 S.Ct. 1963
 
 ;
 
 see also
 

 United States v. Pierson
 
 ,
 
 139 F.3d 501
 
 , 503 (5th Cir. 1998) ("The words 'affecting commerce' are jurisdictional words of art, typically signaling a congressional intent to exercise its Commerce Clause power broadly, perhaps as far as the Constitution permits." (alteration and internal quotation marks omitted)). While some tension exists between
 
 Scarborough
 
 and the Supreme Court's decision in
 
 Lopez
 
 , the Supreme Court has not granted certiorari on a case that would provide further guidance,
 
 see
 

 Alderman
 
 ,
 
 562 U.S. 1163
 
 ,
 
 131 S.Ct. 700
 
 ,
 
 178 L.Ed.2d 799
 
 (mem.) (Thomas, J., dissenting from the denial of certiorari) (discussing this conflict), and circuit courts have routinely relied on
 
 Scarborough
 
 as a basis for distinguishing
 
 Lopez
 
 in the context of firearms-related offenses.
 

 But Congress did not use these jurisdictional words of art in § 249(a)(2)(B)(iv)(I), so this case does not require any reconciliation of
 
 Scarborough
 
 and
 
 Lopez
 
 .
 
 See, e.g.
 
 ,
 
 Jones
 
 , 529 U.S. at 854,
 
 120 S.Ct. 1904
 
 (rejecting the Government's argument that the federal arson statute similarly indicated Congress' intent "to invoke its full authority under the Commerce Clause" because it "contains the qualifying words 'used in' a commerce-affecting activity," thus indicating that the crime is not arson of a building "whose damage or destruction might affect interstate commerce," but rather that the "destroyed property must itself have been used in commerce or in an activity affecting commerce," requiring a two-step analysis, first "into the function of the building itself, and then [into] whether that function affects interstate commerce").
 

 As noted, the Government here affirmatively
 
 eliminated
 
 language representing an interstate or foreign commerce jurisdictional nexus by striking the language of § 249(a)(2)(B)(iv)(II) from the indictment and charging Hill under § 249(a)(2)(B)(iv)(I) alone.
 

 In prosecuting Hill under § 249(a)(2)(B)(iv)(I), the Government sought to punish him for the specific act of punching a co-worker because of that co-worker's actual or perceived sexual orientation, which is also simply a subset of all assaults.
 

 Where a valid jurisdictional element exists, such that a "class of activities is regulated
 
 and that class is within the reach of federal power
 
 , the courts have no power to excise, as trivial, individual instances of the class."
 
 Perez v. United States
 
 ,
 
 402 U.S. 146
 
 , 154,
 
 91 S.Ct. 1357
 
 ,
 
 28 L.Ed.2d 686
 
 (1971) (emphasis added) (internal quotation marks omitted);
 
 see also
 

 Taylor
 
 , 136 S. Ct. at 2081. But that's not the case here, where prosecutions brought under § 249(a)(2)(B)(iv)(I) are not, as a class, activities Congress can regulate under its Commerce Clause power.
 

 The majority sidesteps this federalism mandate by observing that before the Government can prosecute a defendant under § 249(a)(2), the Attorney General must certify that the prosecution "is in the public interest and necessary to secure substantial justice."
 
 18 U.S.C. § 249
 
 (b)(1)(D). It also notes that Virginia prosecutors contacted federal law enforcement to request federal prosecution because Virginia's statutes do not enhance the penalties if an offense is motivated by the victim's sexual orientation. Both points are red herrings. Neither the Executive Branch's view nor a state prosecutor's zeal can overcome the Constitution's grant of limited and enumerated powers to the federal government. It is the Court's responsibility to ensure that Congress has not overreached in enacting § 249(a)(2)(B)(iv)(I) and that the Government has not overreached by prosecuting a defendant under this provision when doing so would exceed Congress' Commerce Clause power.
 

 Specifically, he reported that Amazon's records showed that the distribution center shipped 99.9931% of their packages on time during the shift in which the assault occurred, which was comparable to both the next shift (99.9932%) and the "average for all the shifts during May for that facility" (99.9939%). J.A. 458-59.
 

 While the majority purports to reject the view that § 249(a)(2)(B)(iv)(I) could be applied wherever an individual is at work, it offers no limiting principle for why interfering with an employee's work would not always qualify as interfering with "commercial or other economic activity," whether it's her own activities as an employee or her employer's activities as a member of the national market.